**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GENERAL ELECTRIC BUSINESS | ) | |
| FINANCIAL SERVICES, INC., f/k/a | ) | |
| MERRILL LYNCH BUSINESS FINANCIAL | ) | |
| SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 C 364 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| DONALD L. SILVERMAN, ERIC W. | ) | |
| BRAUSS; and TODAY REALTY | ) | Magistrate Judge Nan R. Nolan |
| ADVISORS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO STRIKE AFFIRMATIVE DEFENSES**

**INTRODUCTION**

This is a simple action for breach of contract arising out of Defendants' breaches of a limited joinder and guaranty of a loan agreement.   In their Answer, Defendants admit that Plaintiff General Electric Business Financial Services ("*GEBFS*") has declared a default under certain promissory notes and has issued a notice of acceleration and demand for payment. (Docket No. 29, Answer to Amended Complaint and Affirmative Defenses, ¶ 13.)   Defendants similarly admit that no payment has been made.  (*Id.*)  Defendants do not deny that the borrower entered into the promissory notes at issue, or that they entered into the limited joinder and guaranty.  Rather, in a futile attempt to circumvent their straightforward obligations, Defendants assert twenty-one paragraphs of allegations "common to their affirmative defenses" that essentially raise the borrower's alleged defenses to the promissory notes.  Indeed, Defendants repeat virtually verbatim the allegations made by the borrower in the various claims it has brought against GEBFS in an adversary proceeding filed in a Texas bankruptcy court. Defendants initially sought to stay this action in favor of that Texas proceeding.  This Court denied Defendants' request, recognizing that the express terms of the limited joinder and guaranty permit GEBFS to pursue Defendants directly, regardless of any claims the borrower may raise elsewhere.  (Docket No. 28, Mem. Opinion and Order, at 3.)  Unable to stay this action, Defendants now seek to stall it by asserting affirmative defenses lacking in legal merit or factual support.

Specifically, Defendants assert four affirmative defenses: (i) fraud in the inducement; (ii) duress; (iii) equitable estoppel; and (iv) unclean hands. In so doing, Defendants make two basic claims in an attempt to evade liability: (1) GEBFS allegedly misrepresented the loan's terms, thereby inducing the borrower to enter into the loan agreement and the Defendants to execute the

limited joinder and guaranty; and (2) GEBFS allegedly misrepresented its intention to modify, extend, or apply fees to the balance of the loan, inducing the borrower to pay a $250,000 forbearance fee.  (Aff. Defenses ¶¶ 6-17.)  These claims, even if true, are immaterial to GEBFS's ability to enforce the limited joinder and guaranty.  Indeed, each affirmative defense is based on allegations of oral modifications to a credit agreement, which are barred under the Illinois Credit Agreement Act.  The affirmative defenses likewise are directly contrary to the explicit terms of loan agreement, as well as the limited joinder and guaranty whereby Defendants expressly waived all defenses and agreed to pay such indebtedness regardless of any defense the borrower may have against GEBFS.  Finally, each affirmative defense fails as a matter of law.  As such, Defendants' affirmative defenses should be stricken.

## FACTUAL BACKGROUND

On or about May 25, 2007, Margaux Warren Park Partners, Ltd. ("*Borrower*") entered into a loan agreement with GEBFS ("*Loan Agreement*") whereby GEBFS agreed to make a first mortgage loan ("*Loan*") to the  Borrower in an original principal amount of $34,800,000 for the acquisition of a 91.65 acre parcel of raw, unimproved land located in Frisco, Texas.  (Docket No. 9, Am. Compl., Ex. A.) In connection with the Loan, the Borrower executed a Tranche A Promissory Note, in the original principal amount of $26,700,000, and a Tranche B Promissory Note, in the original principal amount of $8,100,000 (together, the "*Note*").  (*Id.*, Exs. B and C.) Under the Loan Agreement, the Borrower agreed to certain repayment terms, including the requirement that, by May 2008, the Borrower would either: (1) make a $2,500,000 payment; or (2) have sold at least ten acres of land at $10.80 per square foot and have obtained certain permits from the City of Frisco.  (*Id.*, Ex. A §2.10(c).)

To induce GEBFS to make the Loan, contemporaneously with its execution, the Borrower's Principals, Silverman and Brauss, executed a Limited Joinder.  (Am. Compl., Ex. A.)

Pursuant to the Limited Joinder, Silverman and Brauss each guaranteed full and complete repayment of the Loan, all Expenses of GEBFS (as defined in the Loan Agreement), and all other obligations of the Borrower under the Loan Agreement and related documents in the event the Borrower filed for relief under federal or state bankruptcy, insolvency or receivership laws. *Id.* On December 16, 2008, the Borrower filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division.  (Answer ¶ 14.)

Contemporaneously with the execution of the Note, Defendants also each executed an absolute, continuing, unconditional and irrevocable guaranty ("*Guaranty*").  (Am. Compl., Ex. D.)  Defendants each guaranteed full and prompt payment of the principal of and interest on the Note, and full and prompt payment of all sums that may become due under the Note, the Loan Agreement and the other Loan documents, subject to a maximum liability of $17,400,000 plus 100% of accrued interest and fees, as well as any Enforcement Costs.  (*Id.*, Ex. D ¶¶ 1, 20.)

The Borrower defaulted under Section 2.10(c) of the Loan Agreement by failing either to pay $2,500,000 or to obtain the requisite permits and number of sales.  (Am. Compl. ¶ 12; Aff. Defense ¶ 15.)  As a result, an Event of Default (as defined in the Loan Agreement) occurred and is continuing.  (Am. Compl. ¶ 13.)  On June 5, 2008, GEBFS provided the Borrower and Defendants with notice of default and an opportunity to cure the default pursuant to the Loan Agreement. (*Id.* ¶ 12.)  The default was not cured.  (*Id.*)  As a result, and as permitted by the Loan Agreement, GEBFS accelerated the maturity date of the Note and declared all sums due and payable. (*Id.* ¶ 13.) Notice of acceleration and demand for payment was sent to the Borrower and Defendants on September 3, 2008, yet no payment has been made.  (*See* Answer ¶ 13.)

## ARGUMENT

Under Rule 12(f) of the Federal Rules of Civil Procedure ("Federal Rules"), the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial,

impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "[A] motion to strike can be a useful means of removing 'unnecessary clutter' from a case, which will in effect expedite the proceedings." *Reis Robotics USA, Inc. v. Concept Industries, Inc*., 462 F. Supp. 2d 897, 904 (N.D. Ill. 2006). In determining whether an affirmative defense should be stricken, courts in this district apply a three-part test and analyze whether: (1) the matter is appropriately pled as an affirmative defense; (2) the defense is adequately pled under Federal Rule 8; and (3) the defense is sufficient pursuant to the standard applied to motions pursuant to Federal Rule 12(b)(6). *Id.* at 905. *See also Finova Capital Corp. v. Slyman*, No. 01 C 6244, 2002 WL 318294, at *1 (N.D. Ill. Feb. 25, 2002). In this case, each of Defendants' four affirmative defenses fails to satisfy Federal Rule 8 and is likewise legally deficient under a Rule 12(b)(6) standard.

## I.     THE AFFIRMATIVE DEFENSES DO NOT COMPLY WITH FEDERAL RULE 8.

"[A] party must affirmatively state any avoidance or affirmative defense," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(c)(1), (d)(1). In this case, rather than stating each affirmative defense in a simple, concise, direct manner, Defendants rely on a 21-paragraph "factual" recitation pled in the guise of "facts common to" their four affirmative defenses. Defendants fail, however, to tie any of these "common facts" to the four affirmative defenses pled, much less the specific elements of those defenses. As such, Defendants' affirmative defenses fail to satisfy Federal Rule 8 and should be stricken.

## II.     THE AFFIRMATIVE DEFENSES ARE LEGALLY DEFICIENT

### A.     DEFENDANTS WAIVED THEIR AFFIRMATIVE DEFENSES.

As an initial matter, Defendants waived the right to assert each affirmative defense. Under Illinois law,[1] a guaranty is a contract like any other, and courts thus apply the general

---

[1]   The Loan Agreement, Limited Joinder and Guaranty each provide that the substantive law of Illinois controls. (Am. Compl. Ex A, Loan Agreement § 11.4, Limited Joinder ¶ 3; *id.* Ex. D ¶ 17.) As such, the

rules governing construction of contracts when interpreting a guaranty. *FDIC v. Rayman*, 117 F.3d 994, 998 (7th Cir. 1997). *See also Du Quoin State Bank v. Daulby*, 450 N.E.2d 347, 348-49 (Ill. App. Ct. 1983) ("The rules of construction applicable to contracts generally also apply to contracts of guaranty and if such a contract is unambiguous, it must be enforced as written.").

These principles apply even where the guaranty contains broad statements of guarantor liability. *Du Quoin*, 450 N.E.2d at 349. *See also FDIC*, 117 F.3d at 999 (enforcing waiver of defenses because "[t]he terms of this guaranty are clear, and so we presume that [defendant] intended what is written, and that he knew and understood the implications of what he signed"). As such, Illinois courts will enforce broad waivers of defenses by guarantors. *See Chicago Exhibitors Corp. v. Jeepers! Of Illinois, Inc.*, 876 N.E.2d 129, 137-40 (Ill. App. Ct. 2007) (waiver of defense based on modifications found effective); *Brzozowski v. Northern Trust Co.*, 618 N.E.2d 405, 410 (Ill. App. Ct. 1993) (waiver of defense based on release of collateral found effective); *Chemical Bank v. Paul*, 614 N.E.2d 436, 441 (Ill. App. Ct. 1993) ("Guaranty agreements containing waivers of all defenses . . . have been upheld as validly binding"); *Finova*, 2002 WL 318294, at *2 (citing *Chemical Bank*, 614 N.E.2d at 441).

Defendants' allegations in the Texas Adversary Proceeding, repeated here as facts "common to" Defendants' four affirmative defenses are immaterial to the breach of guaranty claims at issue in this case because the Limited Joinder and Guaranty are "absolute, continuing and unconditional" and because Defendants explicitly waived such defenses. The Limited Joinder provides, in relevant part:

> <u>Waivers</u>. To the fullest extent permitted by applicable law, each Principal ***waives all rights and defenses*** of sureties, guarantors, accommodation parties and/or co-

---

legal and factual sufficiency of the affirmative defenses should be examined pursuant to Illinois law. *See Rao v. Covansys Corp.*, No. 06 C 5451, 2007 WL 141892, at *2 (N.D. Ill. Jan. 17, 2007) (applying state law to determine legal and factual sufficiency of affirmative defenses).

makers and agrees that its obligations under this Joinder shall be direct, primary, absolute and unconditional and that its obligations under this Joinder shall be unaffected by any of such rights or defenses, including. . .

(g) Any acts or omissions of Lender which vary, increase or decrease the risk on any Principal.

(Am. Cmplt. Ex. A, Limited Joinder ¶ 2 (emphasis added).)  The Guaranty similarly provides:

1.  Guarantor *absolutely, unconditionally and irrevocably guarantees*: (a) the full and prompt payment of the principal of and interest on the Note when due . . . ; (b) the prompt, full and complete performance of all of Borrower's obligations under each and every covenant contained in the Loan Documents . . . ; and (c) the full and prompt payment of any Enforcement costs. . . .

* * *

2.  In the event of any Default by Borrower in the payment of the Indebtedness, after the application of any applicable cure or grace period, Guarantor agrees, on demand by Lender, or any holder of the Note (which demand may be made concurrently with notice to Borrower that Borrower is in default of its obligations), to pay the Indebtedness *regardless of any defense, right of set-off or claims which Borrower or Guarantor may have against Lender* or the holder of the Note.

* * *

5.  This is an *absolute, present and continuing guaranty of payment* and not of collection.  Guarantor agrees that this Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any other security or collateral given in connection herewith or with the Note, Loan Agreement, Mortgage or any of the other Loan Documents through foreclosure or sale proceedings, as the case may be, under the Mortgage or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrower in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right.

(Am. Compl., Ex. D Guaranty ¶¶ 1-2, 5 (emphasis added).)

Under Illinois law, Defendants have unconditionally agreed to fulfill the Borrower's obligations and have waived any rights to assert any conduct of GEBFS as a defense to this action to enforce the Limited Joinder and Guaranty.  The conduct Defendants assert amounts to little more than complaints about GEBFS's negotiation of the Loan and Forbearance

Agreements.  This Court should enforce Defendants' clear and unambiguous waivers and strike the affirmative defenses.

**B.    THE ILLINOIS CREDIT AGREEMENT ACT BARS THE AFFIRMATIVE DEFENSES.**

Defendants make two basic claims: (1) GEBFS allegedly misrepresented the terms of the Loan thereby inducing Defendants to enter into the Loan Agreement, Limited Joinder and Guaranty; and (2) GEBFS allegedly misrepresented its intention to modify or extend the Loan or apply fees to the balance for the Loan inducing Defendants to pay a $250,000 forbearance fee. (Aff. Defenses ¶¶ 6-17.)   Essentially, Defendants claim that they trusted the representatives with whom they were dealing to agree to loan modifications in the event the Borrower defaulted, based on a prior history of having done so, yet no provision of the Loan Agreement so states. (*See id.*)

The Illinois Credit Agreement Act ("*ICAA*"), bars this type of reliance on matters outside the four corners of a valid, binding credit agreement that contradicts the terms of that agreement. Specifically, the ICAA provides:

> Credit agreements to be in writing.  ***A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing***, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
>
> * * *
>
> [T]he agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement . . .

cannot provide the basis for a defense unless it satisfies the writing requirement of the ICAA.

815 ILCS §160/2; 815  ILCS §160/3 (emphasis added).

The affirmative defenses in this case are, in reality, assertions that GEBFS entered into oral contracts that purport to modify the terms of the Loan Agreement.   Under the ICAA, "[c]ourts have uniformly barred the claims and defenses of debtors which have relied on the existence of oral credit agreements."  *Westinghouse Elec. Corp. v. McLean*, 938 F. Supp. 487, 490 (7th Cir. 1996).  The ICAA has specifically barred alleged oral modifications or extensions to existing written credit agreements.[2]  *General Electric Capital Corp. v. Donogh Homes*, No. 93 C 5614, 1993 WL 524814, at *3 (N.D. Ill. Dec. 15, 1993).

> As noted by Judge Coar in *Westinghouse Electric Corp. v. McLean*, 938 F. Supp. 487, 492  (N.D. Ill. 1996), the legislature concluded that "justice was best served by putting all parties to covered transactions on notice that the agreement will be enforced as written.   Winks and nods and whispered promises to deviate therefrom would not be enforced."

*DaimlerChrysler Servs. North America, LLC v. North Chicago Mktg., Inc.,* No. 02 C 5633, 2004 WL 741740, at *3 (N.D. Ill. Apr. 6, 2004).

Affirmative defenses, such as those present here, which are based on allegations that contradict the terms of the written credit agreements or that rely on alleged oral modifications of such agreements, are barred by the ICAA.  In *Whirlpool Financial Corp. v. Sevaux* for example, the Seventh Circuit held the ICAA barred all of a debtor's affirmative defenses that were based on a creditor's oral promise to lend additional funds to the debtor.  96 F.3d 216, 226 (7th Cir. 1996) ("Because the Credit Agreements Act prohibits a debtor from defending on the basis of an oral promise to 'enter into a new credit agreement,' the Act precludes all of Mr. Sevaux's affirmative defenses.") (citation omitted.)  *See also Finova,* 2002 WL 318294, at *5 (striking affirmative defense as barred by the ICAA); *Teachers Ins. & Annuity Ass'n of America v. LaSalle*

---

[2]   The ICAA applies to "all claims, whether sounding in contract or tort."  *Westinghouse*, 938 F. Supp. at 490 (citing *First Nat'l Bank in Staunton v. McBride Chevrolet, Inc*., 642 N.E.2d 138, 142 (Ill. App. Ct. 1994)).

*Nat. Bank*,  691 N.E.2d 881, 888 (Ill. App. Ct. 1998) (holding the ICAA barred defendants'
affirmative defenses and counterclaims that relied on plaintiff's oral agreement to modify a
loan).  The allegations underlying Defendants' affirmative defenses thus establish they are barred
by the ICAA.

### C.   THE UNAMBIGUOUS TERMS OF THE LIMITED JOINDER AND GUARANTY DEFEAT DEFENDANTS' FRAUDULENT INDUCEMENT DEFENSE.

Even assuming it was not waived or otherwise barred by the ICAA, Defendants'
fraudulent inducement claim is legally and factually deficient.  To plead fraudulent inducement,
a plaintiff must allege: (1) a false statement of material fact; (2) the defendant's knowledge that
the statement was false; (3) the defendant's intention to induce the plaintiff to act; (4) the
plaintiff's reliance on the truth of the defendant's statement; and (5) resulting damages to the
plaintiff.  *Visco Fin. Servs., Ltd. v. Siegel*, No. 08 C 4029, 2008 WL 4900530, at *6 (N.D. Ill.
Nov. 13, 2008).  Under Illinois law, the terms of "a written contract override[] all prior and
contemporaneous negotiations and agreements regarding the same subject matter."  *Id.* at *7.

For example, in *Visco*, the District Court struck an affirmative defense of fraudulent
inducement where the defendant claimed that the lender promised never to enforce the
defendant's guaranty absent some sort of malfeasance, despite the lack of any such promise in
the final written agreement.  *Id.*  In striking the defense, the court held that because the defendant
had access to the document prior to signing, the defendant had equal knowledge of its contents
and could not have justifiably relied on the lender's prior statements.  *Id.* (striking affirmative
defense of fraudulent inducement because "it violate[d] well-established principles of contract
law").  *See also Cozzi Iron & Metal, Inc. c. U.S. Office Equipment, Inc.*, 250 F.3d 570, 573 (7th
Cir. 2001) ("[A]s long as the complaining party could have discovered the fraud by reading the

contract and had the opportunity to do so, Illinois courts have refused to extend the doctrine of fraudulent inducement to invalidate contracts.").

In this case, Defendants' fraudulent inducement defense appears to be based on two allegations: (1) GEBFS allegedly misrepresented the terms of the Loan thereby inducing Defendants to enter into the Loan Agreement, Limited Joinder and Guaranty; and (2) GEBFS allegedly misrepresented its intention to modify or extend the Loan or apply fees to the balance for the Loan inducing Defendants to pay a $250,000 forbearance fee.   (Aff. Def. ¶¶ 6-17). Nothing in the Loan documents required GEBFS to modify the terms of the Loan or otherwise extend the payment terms to accommodate the Borrower – though GEBFS did in fact allow the borrower additional time to remedy its default.   (*See id.* ¶ 15.)   To the extent Defendants now contend that they were fraudulently induced to enter into the Loan Agreement as a result of alleged pre-contractual promises to forbear, Defendants' reliance was not justified.   Defendants' affirmative defense of fraudulent inducement is thus legally deficient and should be stricken.[3]

### D.   DEFENDANTS' DURESS CLAIM IS LEGALLY INFIRM.

Economic duress, an affirmative defense to contract enforcement, is present when one party is (a) "induced by a wrongful act or threat of another to make a contract" (b) "under

---

[3] Defendants' fraudulent inducement defense also fails to satisfy Federal Rule 9(b).  To satisfy Federal Rule 9(b), a party alleging fraud must at least set forth "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777 (7th Cir. 1994).  The particularity requirement of Rule 9(b) is akin to "the essentials of the first paragraph of any newspaper story, namely the who, what, when, where and how." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 840-41 (7th Cir. 2007).  Defendants contend that GEBFS fraudulently induced the Borrower to enter into the Note and the Defendants to enter into the Guaranty and Limited Joinder.  (Aff. Defense No. 1.)  To support this defense, Defendants cite only to the alleged statement of William Ballent, who purportedly "told Defendants that so long as they were working diligently on the Warren Park project and making reasonably prompt progress on the project, Merrill Lynch would make necessary modifications, extensions and accommodations as needed in order for completion of the project." (*Id.* ¶ 6.)  Defendants fail to allege, however, the location, date or method of this alleged misrepresentation.  Such details are critical to the resolution of this case, particularly as to the element of reliance, as it is impossible for Defendants to refute such a general allegation.

circumstances that deprive one of the exercise of one's own free will." *Hurd v. Wildman, Harrold, Allen, and Dixon*, 707 N.E.2d 609, 614 (Ill. App. Ct. 1999). Defendants fail to adequately allege either element.

First, GEBFS acted within its contractual rights. An economic duress defense "cannot be predicated upon a demand that is lawful or upon doing or threatening to do that which a party has a legal right to do." *Id*; *see also Krilich v. Am. Nat'l Bank & Trust Co. of Chi.*, 778 N.E.2d 1153, 1162 (Ill. App. Ct. 2002) ("Ordinarily, a threat to break a contract does not constitute duress.") (citation omitted). In *Krilich*, for example, the court affirmed dismissal of a claim for economic duress made by a real estate purchaser who alleged he entered into a second modification of a purchase contract only after the developer threatened to breach the contract unless the amendment was executed. 778 N.E.2d at 1162. The court held that a party who enters a contract while merely under financial pressure or who agrees to unfavorable terms due to the other party's hard bargaining position has not entered the contract under duress. *Id.* "Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated on the basis of duress." *Id.*

Defendants allege only that GEBFS changed the terms of the Loan package "just prior to the Closing." (Aff. Defense ¶ 9.) The pressure felt by Defendants to close the loan, however, was admittedly of their own making, as they admit to having signed a purchase contract for the property on which the due diligence option period had already lapsed and concede they had invested a substantial amount of money preparing to close the deal, prior to obtaining funding. *Id.* As such, Defendants claim that they had no choice but to accept the changes. *Id.* This scenario, even if true, does not state a valid claim for duress. As in *Krilich*, Defendants do not allege facts regarding any conduct by GEBFS that was wrongful or fraudulent. Rather,

Defendants admit to having gotten themselves into a bad position so that they were required to accept the terms proposed by GEBFS because of circumstances brought about by their own actions.  Thus, Defendants' factual allegations do not support a claim of duress.

Second, Defendants have not alleged, even conclusorily, that the Loan Agreement, Limited Joinder, or Guaranty were executed while Defendants lacked free will.  To establish lack of free will while under duress, "one must demonstrate that the threat has left the individual 'bereft of the quality of mind essential to the making of a contract.'"  *Hurd*, 707 N.E.2d at 614 (citing *Alexander v. Standard Oil Co.*, 423 N.E.2d 578, 582 (Ill. App. Ct. 1981)).  In *Alexander*, the court affirmed dismissal of employees' claims for economic coercion and duress because the employees "ha[d] ample time for inquiry, examination, and reflection" on the employment agreements they entered into.  423 N.E.2d at 583.  Without facts to show Defendants were "bereft of the quality of mind" when the Loan or loan modifications were entered into, the second element of economic duress, like the first, has not been alleged.

In addition, a party who ratifies a contract by accepting its benefits, as Defendants did here by accepting the proceeds of the Loan and entering into several loan modification agreements, cannot later seek rescission of that contract by claiming to be "bereft of mind" when the contract was executed.  *See Alexander*, 423 N.E.2d at 583 (stating the fact that plaintiffs retained the benefits of the employment contracts created a rebuttable presumption that plaintiffs were not under duress when entering into the contracts); *Inland Land Appreciation Fund, L.P. v. County of Kane,* 800 N.E.2d 1232, 1239 (Ill. App. Ct. 2003) (affirming trial court's finding that plaintiffs who retained benefits under a contract for eight months ratified the contract in question and were not under duress).

### E.     DEFENDANTS' EQUITABLE ESTOPPEL DEFENSE IS DEFICIENT.

Estoppel must be pled with the specific elements required to establish the defense.  *Reis*

*Robotics USA Inc. v. Concept Industries, Inc.*, 462 F. Supp. 2d 897 (N.D. Ill. 2006); *State Farm*

*Mut. Automobile Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D. Ill. 2001).   The elements of

equitable estoppel in Illinois are: (1) words or conduct amounting to a misrepresentation or

concealment of material facts; (2) knowledge at the time the representations were made that the

representations were false, or that the representation was made with gross negligence as to their

truth; (3) the truth respecting the representations was unknown to the party asserting estoppel at

the time the representations were made and when they were acted upon; (4) the party against

whom estoppel is claimed must intend or reasonably expect that the representations or

concealment would be acted upon by the party asserting estoppel or the public generally; (5) the

party asserting estoppel must have relied upon the representation in good faith to its detriment;

and (6) the party claiming the benefit of the estoppel would be prejudiced if the other party is

permitted to deny the falsity of the misrepresentation or concealment.  *Household Fin. Servs.,*

*Inc. v. Northeastern Mortg. Inv. Corp.*, No. 00 C 0667, 2000 WL 816795, at \*2 (N.D. Ill. June

22, 2000).  The defense of estoppel, like fraud, must be pled with the particularity required under

Rule 9(b).  *U.S. ex rel. James Cape & Sons Co. v. American Home Assur. Co.*, No. 02 C 1903,

2004 WL 3119029, at \*8 (N.D. Ill. Dec. 3, 2004).  In this case, Defendants' equitable estoppel

defense is devoid of any factual support whatsoever and should thus be stricken.

As set forth above, Defendants' factual allegations in support of their affirmative

defenses illustrate only that GEBFS negotiated the terms of an agreement and enforced that

agreement, not that it engaged in any inequitable conduct.  Defendants have failed to explain, in

their expansive, but immaterial, factual recitation, why GEBFS should be foreclosed from

exercising its contractual rights, much less what facts support each element of each particular

defense.  Putting aside this fundamental deficiency, Defendants' allegations, even if true, do not

support an unclean hands defense. Defendants' third affirmative defense should thus be stricken. *See Finova,* 2002 WL 318294, at *6 (striking equitable estoppel defense because it failed to set forth the elements of the defense). *See also Marchbanks v. Beelman River Terminals, Inc*., No. 3:06-CV-720-DRH-CJP, 2007 WL 1266520, at *2 (S.D. Ill. Apr. 30, 2007) (striking affirmative defense that merely stated plaintiff's claims are barred by estoppel); *Weber Shandwick Worldwide v. Reid*, No. 05 C 709, 2005 WL 1651030, at *6 (N.D. Ill. May 12, 2005) (striking affirmative defense that failed to put plaintiff on notice of the conduct justified estoppel).

## F.   DEFENDANTS' UNCLEAN HANDS DEFENSE IS BARRED.

"Under Illinois law, 'the clean hands doctrine operates to bar equitable remedies and does not affect legal rights.'" *Citadel Group Ltd. v. Washington Regional Medical Ctr.*, No. 07-CV-1934, 2009 WL 1329217, at *5 (N.D. Ill. May 13, 2009) (quoting *Am. Nat'l Bank & Trust Co. of Chicago v. Levy*, 404 N.E.2d 946, 948 (Ill. App. Ct. 1980)). In *Citadel*, for example, the court struck the defendant's affirmative defense of unclean hands because the complaint was for breach of contract, seeking damages at law and not in equity. *Id.* The same result is warranted here. GEBFS has sought only relief at law for Defendants' breach of their obligations under the Limited Joinder and Guaranty. As such, Defendants' fourth affirmative defense is insufficient.

Even putting aside this fundamental deficiency, Defendants' allegations, even if true, do not support an affirmative defense of unclean hands. The doctrine of unclean hands prevents a party from coming to equity and seeking relief while "taking advantage of his own wrong." *Schivarelli v. Chicago Transit Auth.*, 823 N.E.2d 158, 168 (Ill. App. Ct. 2005) (citing *Jaffe Commercial Fin. Co. v. Harris*, 456 N.E.2d 224, 228 (Ill. App. Ct. 1983)). Application of the doctrine is disfavored in Illinois, and is appropriate only if there is fraud or bad faith. *Id.* In *Schivarelli*, the Illinois Appellate Court reversed the Circuit Court's finding in favor of the

14

plaintiffs who asserted an unclean hands affirmative defense because the plaintiffs failed to present evidence of either fraud or bad faith. *Id*. Asserting contract rights does not constitute bad faith. *See, e.g.*, *Gore v. Indiana Ins. Co.*, 876 N.E.2d 156, 163 (Ill. App. Ct.) (declining to find bad faith when a company acted within its contract rights, because "we cannot now allow [plaintiff] to claim that defendants acted in bad faith in computing the prices he agreed to pay"); *cf. Long v. Kemper Life Ins. Co*., 553 N.E.2d 439, 441 (Ill. App. Ct. 1990) (holding plaintiffs who intentionally misrepresented the state of a decedent's health when applying for a life insurance policy acted in bad faith and were barred by the doctrine of unclean hands from seeking equitable relief). Defendants' allegations illustrate only that GEBFS was acting within its rights under the Loan documents. Thus, Defendants have failed to allege that GEBFS has acted in bad faith or that it came to a court of equity with unclean hands, and the Fourth Affirmative Defense should be stricken.

## CONCLUSION

For the foregoing reasons, GEBFS respectfully requests that this Court strike the affirmative defenses alleged by Defendants in their entirety.

Dated: September 8, 2009               Respectfully submitted,

                                       **GENERAL ELECTRIC BUSINESS FINANCIAL SERVICES, INC.**

                                       By: /s/  Dawn M. Canty
                                             One of Its Attorneys

Timothy J. Patenode
Dawn M. Canty
Heather Kuhn O'Toole
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe
Chicago, IL 60661
(312) 902-5200

15

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that she caused a true and correct copy of the foregoing PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSES and MEMORANDUM IN SUPPORT thereof to be filed using the CM/ECF system on September 8, 2009, which will send notification of such filing to the registered CM/ECF users listed below:

> Steven P. Blonder, Esq.
> Shawn M. Staples, Esq.
> Much Shelist Denenberg
> Ament & Rubenstein P.C.
> 191 North Wacker Drive, Suite 1800
> Chicago, Illinois 60606

> /s/ Dawn M. Canty