**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GENERAL ELECTRIC BUSINESS ) <br> FINANCIAL SERVICES, INC., f/k/a ) <br> MERRILL LYNCH BUSINESS FINANCIAL ) <br> SERVICES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DONALD L. SILVERMAN, *et. al.*, ) <br> ) <br> Defendants. ) | Case No. 09 C 364 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Nan R. Nolan |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

This is a simple action for breach of contract arising out of each Defendant's breach of a Limited Joinder[1] and Guaranty of a Loan Agreement. The material facts of this case are not in dispute. Borrower defaulted on its obligations under certain promissory notes. GEBFS declared a default and issued a notice of acceleration and demand for payment. No payment has been made. Defendants do not deny that Borrower entered into the Loan Agreement and promissory notes at issue, or that they entered into the Limited Joinder and Guaranty. There is no dispute that Defendants have refused to satisfy their obligations under the Limited Joinder or Guaranty and, thus, are in breach of their respective contractual obligations.

The Limited Joinder and Guaranty executed by Defendants are unambiguous and must be enforced as written. The express terms of the Limited Joinder and Guaranty permit GEBFS to pursue Defendants directly, regardless of any claims or defenses Borrower may raise to GEBFS's default notice. Each of Defendants' affirmative defenses thus is meritless. Furthermore, each contract expressly waives any defense to its enforcement. As such, there is no impediment to this Court granting summary judgment in favor of GEBFS.

Defendants have delayed GEBFS' ability to enforce these straightforward contracts far too long – first by seeking to stay this action, then by seeking to stall it by asserting meritless affirmative defenses. Obviously, Defendants are satisfied with the status quo whereby Borrower continues to hold the property, has retained the loan proceeds, and has stopped making payments. GEBFS, on the other hand, has the absolute right to require Defendants to meet Borrower's unfulfilled obligations, but has been stymied by a full complement of delay tactics – from Borrower's bankruptcy filing, to the assertion of unsustainable claims by Borrower and

---

[1] Defined terms shall have the meanings ascribed to them in Plaintiff's Local Rule 56.1 Statement of Material Facts.

Defendants in an attempt to avoid the Loan Agreement and unconditional guaranty obligations. The time has come to set aside their futile protestations and enforce Defendants' obligations.

## STATEMENT OF UNDISPUTED FACTS

### A.   The Secured and Guaranteed Indebtedness

In 2007, GEBFS agreed to loan Warren Park $34,800,000 to acquire real estate in Texas. (Local Rule 56.1 Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment ("SOF"), ¶8.)  Pursuant to the terms of the Loan Agreement, Warren Park executed two promissory notes totaling $34,800,000.  (SOF ¶8.)  In order to induce GEBFS to make the Loan, contemporaneously with the execution of the Loan Agreement and Note, Defendants Silverman and Brauss each executed a Limited Joinder, pursuant to which each guaranteed the full and complete repayment of the Loan, all GEBFS' Expenses, and all other obligations of Warren Park under the Loan Agreement and related documents in the event that Warren Park filed for bankruptcy relief.  (SOF ¶¶10-11.)

Defendants also each executed an unconditional Guaranty pursuant by which they each guaranteed payment of the principal and interest on the Note, and all sums that may become due under the Note, the Loan Agreement and the other Loan documents, subject to a maximum liability of $17,400,000 plus 100% of accrued interest and fees.  (SOF ¶12-13.)  Defendants also each guaranteed payment of Enforcement Costs, including attorneys' fees, costs, and expenses incurred in connection with the enforcement of the Guaranty and other Loan documents.  (SOF ¶14.)  GEBFS is the owner and holder of, and is in possession of, the Loan Agreement, the Note, and the Guaranty.  (SOF ¶15.)

### B.   Warren Park's Default

Warren Park defaulted under the Loan Agreement by failing to pay GEBFS $2,500,000 when due, and by failing to obtain certain approvals from the city of Frisco and to sell no less

than ten acres of the Property. (SOF ¶16.) GEBFS provided Warren Park and Defendants notice of this default on June 5, 2008. (SOF ¶17.) As a result of Warren Park's failure to pay this amount, an Event of Default occurred and is continuing. As a consequence, GEBFS accelerated the maturity date of the Note and declared all sums due under the Warren Park Loan documents due and payable. (SOF ¶ 18.) Notice of acceleration and demand for payment was made to Warren Park and Defendants on September 3, 2008, yet to date no payment has been made. (SOF ¶19.) On December 16, 2008, Warren Park filed for Chapter 11 bankruptcy in the United States Bankruptcy Court, Eastern District of Texas, Sherman Division. (SOF ¶20.)

## ARGUMENT

### I. LEGAL STANDARD AND APPLICABLE LAW

Summary judgment may be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To withstand summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A party must present "more than a scintilla of evidence" to defeat summary judgment. *Senner v. Northcentral Technical Coll.*, 113 F.3d 750, 757 (7th Cir. 1997). "Speculation does not create a *genuine* issue of fact, instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) (italics in original). The Loan Agreement, Limited Joinder and Guaranty each provide that the substantive law of Illinois controls. (Limited Joinder, attached as part of Exhibit A to the Affidavit of Matthew Ehret ("Ehret Aff."), ¶3; Guaranty, attached as Ehret Aff. Ex. D, ¶17.) Thus, Illinois law governs their interpretation. *See LaSalle Bus. Credit, Inc. v. Lapides*, No. 00 C 8145, 2003 WL 722237, at *13 n.8 (N.D. Ill. Mar. 3, 2003) (noting law applicable to contract is that which the parties intended).

3

## II.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW ON ITS CLAIMS FOR BREACH OF THE LIMITED JOINDER AND GUARANTY.

### A.   BORROWER BREACHED THE LOAN AGREEMENT.

Where an agreement is unambiguous, the interpretation of the contract is for the Court. *First Nat'l Bank of Louisville v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, No. 89 C 8464, 1990 WL 16986, at *1 (N.D. Ill. Jan. 30, 1990) ("If a contract is unambiguous, by definition, no material questions of fact exist regarding the contract's interpretation."). In this case, Borrower entered into a Loan Agreement which unambiguously required Borrower, by May 2008, to either: (1) make a $2,500,000 payment; or (2) have sold at least ten acres of land at $10.80 per square foot and have obtained certain permits from the City of Frisco. (Ehret Aff. Ex. A §2.10(c).) Defendants admit that Borrower failed to meet either of these obligations. (SOF ¶16.) As a result of this Event of Default, GEBFS accelerated the maturity date of the Note and declared all sums due under the Warren Park Loan documents, including, but not limited to, principal, interest and default interest (which continue to accrue), and late fees. (SOF ¶18.) GEBFS gave notice of acceleration and demand for payment on September 3, 2008. (SOF ¶19.) To date no payment has been made. (SOF ¶19.) Thus, there can be no dispute that Borrower is in breach of its obligations under the Loan Agreement.

### B.   DEFENDANTS SILVERMAN AND BRAUSS BREACHED THE LIMITED JOINDER.

To induce GEBFS to make the Loan, contemporaneously with its execution, Borrower's Principals, Silverman and Brauss, executed a Limited Joinder. (Ehret Aff. Ex. A.) Pursuant to the Limited Joinder, Silverman and Brauss each guaranteed full and complete repayment of the Loan, including Expenses and Borrower's other obligations in the event Borrower filed for bankruptcy. *Id.* On December 16, 2008, Borrower filed for bankruptcy. (SOF ¶20.) As such, by the clear and unambiguous terms of the Limited Joinder, Silverman and Brauss became fully

liable for the obligations set forth above.  (Ehret Aff. Ex. A.)  Despite these obligations, Silverman and Brauss have refused to pay GEBFS the amounts owed.  (SOF ¶19.)  As such, there is no material issue of fact precluding summary judgment in favor of GEBFS on Count I of its Amended Complaint.  *See AGM II, LLC v. Stadelman*, No. 07 C 1980, 2008 WL 4104358, at *3 (N.D. Ill. Aug. 26, 2008) (granting summary judgment where there was no material issue of fact as to existence of guaranty or its terms).

### C.   DEFENDANTS ARE LIABLE UNDER THE GUARANTY.

"To prevail on a claim to enforce a guaranty, a plaintiff must 'enter [ ] proof of the original indebtedness, the debtor's default and the guarantee.'"  *S.P. Richards Co. v. Business Supply Corp.*, No. 07 CV 1753, 2008 WL 4181729, at *3 (N.D. Ill. Sept. 5, 2008).  In this case, Defendants do not deny that: (i) Borrower executed the Loan Agreement and related Notes, evidencing its indebtedness to GEBFS (SOF ¶8); (ii) Defendants executed the Guaranty, which is an absolute, continuing, unconditional, and irrevocable guaranty of Borrower's obligations (SOF ¶12); or (iii) Borrower breached its obligations under the Loan Agreement (SOF ¶16). Yet, despite demands for payment, Defendants have refused to satisfy Borrower's outstanding obligations.  (SOF ¶19.)  Thus, there is no issue of material fact precluding a finding that Defendants have breached their obligations under the Guaranty.  *See S.P. Richards*, 2008 WL 4181729, at *3; *Ace Hardware Corp. v. Marn, Inc.*, No. 06-CV-5335, 2008 WL 4286975, at *16 (N.D. Ill. Sept. 16, 2008) (granting summary judgment on breach of guaranty claim because no issue of material fact existed as to borrower's liability under credit agreement).

### III.   DEFENDANTS' AFFIRMATIVE DEFENSES FAIL AS A MATTER OF LAW AND DO NOT PRECLUDE ENTRY OF JUDGMENT IN FAVOR OF GEBFS.

In an effort to evade their liability for their guaranties of the admitted breach of the Loan Agreement, Defendants assert four affirmative defenses: (i) fraud in the inducement; (ii) duress;

5

(iii) equitable estoppel; and (iv) unclean hands.  Defendants bear the burden of proving that any of these affirmative defenses is sufficient to defeat summary judgment.  *See, e.g.*, *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307 (7th 1989)  ("[W]hen the party opposing the motion bears the burden of proof on a particular issue, it cannot rest on its pleadings alone.  Rather, it must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial.").  As set forth below, Defendants have not met (and cannot meet) this burden, and these defenses do not preclude summary judgment in favor of GEBFS.

      **A.**      **DEFENDANTS WAIVED ANY DEFENSES TO THE ENFORCEMENT OF THE LIMITED JOINDER AND GUARANTY.**

Defendants waived the right to assert each affirmative defense.  Under Illinois law, a guaranty is a contract like any other, and courts thus apply the general rules governing construction of contracts when interpreting a guaranty.  *FDIC v. Rayman*, 117 F.3d 994, 998 (7th Cir. 1997).  *See also Du Quoin State Bank v. Daulby*, 450 N.E.2d 347, 348-49 (Ill. App. Ct. 1983) ("The rules of construction applicable to contracts generally also apply to contracts of guaranty and if such a contract is unambiguous, it must be enforced as written.").  These principles apply even where the guaranty contains broad statements of guarantor liability.  *Du Quoin*, 450 N.E.2d at 349.  *See also FDIC*, 117 F.3d at 999 (enforcing waiver of defenses because "[t]he terms of this guaranty are clear, and so we presume that [defendant] intended what is written, and that he knew and understood the implications of what he signed").  As such, Illinois courts will enforce broad waivers of defenses by guarantors.  *See Chicago Exhibitors Corp. v. Jeepers! Of Illinois, Inc.*, 876 N.E.2d 129, 137-40 (Ill. App. Ct. 2007) (waiver of defense based on modifications found effective); *Brzozowski v. Northern Trust Co.*, 618 N.E.2d 405, 410 (Ill. App. Ct. 1993) (waiver of defense based on release of collateral found effective); *Chemical Bank v. Paul*, 614 N.E.2d 436, 441 (Ill. App. Ct. 1993) ("Guaranty agreements

6

containing waivers of all defenses . . . have been upheld as validly binding"); *Finova*, 2002 WL 318294, at *2 (citing *Chemical Bank*, 614 N.E.2d at 441).

The Limited Joinder and Guaranty are "absolute, continuing and unconditional." The Limited Joinder provides, in relevant part:

> Waivers.  To the fullest extent permitted by applicable law, each Principal *waives all rights and defenses* of sureties, guarantors, accommodation parties and/or co-makers and agrees that its obligations under this Joinder shall be direct, primary, absolute and unconditional and that its obligations under this Joinder shall be unaffected by any of such rights or defenses, including. . .
>
> (g) Any acts or omissions of Lender which vary, increase or decrease the risk on any Principal.

(Ehret Aff. Ex. A, Limited Joinder ¶ 2 (emphasis added).)  The Guaranty similarly provides:

> 1.  Guarantor *absolutely, unconditionally and irrevocably guarantees*: (a) the full and prompt payment of the principal of and interest on the Note when due . . . ; (b) the prompt, full and complete performance of all of Borrower's obligations under each and every covenant contained in the Loan Documents . . . ; and (c) the full and prompt payment of any Enforcement costs. . . .
>
> * * *
>
> 2.  In the event of any Default by Borrower in the payment of the Indebtedness, after the application of any applicable cure or grace period, Guarantor agrees, on demand by Lender, or any holder of the Note (which demand may be made concurrently with notice to Borrower that Borrower is in default of its obligations), to pay the Indebtedness *regardless of any defense, right of set-off or claims which Borrower or Guarantor may have against Lender* or the holder of the Note.
>
> * * *
>
> 5.  This is an *absolute, present and continuing guaranty of payment* and not of collection.  Guarantor agrees that this Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any other security or collateral given in connection herewith or with the Note, Loan Agreement, Mortgage or any of the other Loan Documents through foreclosure or sale proceedings, as the case may be, under the Mortgage or otherwise, or resorting to any other guaranties, and Guarantor hereby waives any right to require Lender to join Borrower in any action brought hereunder or to commence any action against or obtain any judgment against Borrower or to pursue any other remedy or enforce any other right.

(Ehret Aff. Ex. D Guaranty ¶¶ 1-2, 5 (emphasis added).)

7

Defendants have unconditionally agreed to fulfill Borrower's obligations and have waived any rights to assert any conduct of GEBFS as a defense to enforcement. The conduct Defendants assert in support of its defenses amounts to little more than complaints about GEBFS's negotiation of the Loan and Forbearance Agreements. Such complaints cannot preclude enforcement of Defendants' clear and unambiguous waivers.

### B.   THE ILLINOIS CREDIT AGREEMENT ACT DEFEATS DEFENDANTS' AFFIRMATIVE DEFENSES.

Defendants make two basic claims: (1) by misrepresenting the terms of the Loan, GEBFS induced Defendants to enter into the loan documents; and (2) GEBFS misrepresented its intention to modify or extend the Loan or apply fees to the balance for the Loan, inducing Defendants to pay a $250,000 forbearance fee. (Aff. Defenses ¶¶ 6-17.) Essentially, Defendants claim to have trusted GEBFS to modify the loan in the event of default, based on a prior history of having done so, yet no provision of the Loan Agreement so states. (*See id.*)

The Illinois Credit Agreement Act ("*ICAA*") bars such alleged reliance on matters outside the four corners of a valid credit agreement that contradicts the terms of that agreement:

> Credit agreements to be in writing. ***A debtor may not maintain an action on or in any way related to a credit agreement unless the credit agreement is in writing***, expresses an agreement or commitment to lend money or extend credit or delay or forbear repayment of money, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.
>
> * * *
>
> [T]he agreement by a creditor to modify or amend an existing credit agreement or to otherwise take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies in connection with an existing credit agreement, or rescheduling or extending installments due under an existing credit agreement . . .

cannot provide the basis for a defense unless it satisfies the writing requirement of the ICAA. 815 ILCS §160/2; 815 ILCS §160/3 (emphasis added).

The affirmative defenses in this case are, in reality, assertions that GEBFS entered into

oral contracts that purport to modify the terms of the Loan Agreement. Under the ICAA, "[c]ourts have uniformly barred the claims and defenses of debtors which have relied on the existence of oral credit agreements." *Westinghouse Elec. Corp. v. McLean*, 938 F. Supp. 487, 490 (7th Cir. 1996). The ICAA has specifically barred alleged oral modifications or extensions to existing written credit agreements.[2] *General Electric Capital Corp. v. Donogh Homes*, No. 93 C 5614, 1993 WL 524814, at *3 (N.D. Ill. Dec. 15, 1993).

> As noted by Judge Coar in *Westinghouse Electric Corp. v. McLean*, 938 F. Supp. 487, 492 (N.D. Ill. 1996), the legislature concluded that "justice was best served by putting all parties to covered transactions on notice that the agreement will be enforced as written. Winks and nods and whispered promises to deviate therefrom would not be enforced."

*DaimlerChrysler Servs. North America, LLC v. North Chicago Mktg., Inc.,* No. 02 C 5633, 2004 WL 741740, at *3 (N.D. Ill. Apr. 6, 2004).

Affirmative defenses, such as those present here, which are based on allegations that contradict the terms of the written credit agreements or that rely on alleged oral modifications of such agreements, are barred by the ICAA. In *Whirlpool Financial Corp. v. Sevaux* for example, the Seventh Circuit held the ICAA barred all of a debtor's affirmative defenses that were based on a creditor's oral promise to lend additional funds to the debtor. 96 F.3d 216, 226 (7th Cir. 1996) ("Because the Credit Agreements Act prohibits a debtor from defending on the basis of an oral promise to 'enter into a new credit agreement,' the Act precludes all of Mr. Sevaux's affirmative defenses.") (citation omitted). *See also Daimler Chrysler Servs. North America, LLC v. North Chicago Mktg., Inc.*, No. 02 C 5633, 2004 WL 741740, at *3 (N.D. Ill. Apr. 6, 2004) (granting summary judgment in favor of plaintiff and finding ICAA precluded fraudulent

---

[2] The ICAA applies to "all claims, whether sounding in contract or tort." *Westinghouse*, 938 F. Supp. at 490 (citing *First Nat'l Bank in Staunton v. McBride Chevrolet, Inc*., 642 N.E.2d 138, 142 (Ill. App. Ct. 1994)).

9

inducement claim); *Teachers Ins. & Annuity Ass'n of America v. LaSalle Nat. Bank*, 691 N.E.2d 881, 888 (Ill. App. Ct. 1998) (holding the ICAA barred defendants' affirmative defenses and counterclaims that relied on plaintiff's oral agreement to modify a loan). The allegations underlying Defendants' affirmative defenses thus establish they are barred by the ICAA.

### C. THE UNAMBIGUOUS TERMS OF THE LIMITED JOINDER AND GUARANTY DEFEAT DEFENDANTS' FRAUDULENT INDUCEMENT DEFENSE.

Even assuming it was not waived or barred by the ICAA, Defendants' fraudulent inducement claim is deficient. To establish fraudulent inducement, a plaintiff must prove: (1) defendant made a false statement of material fact; (2) defendant knew that the statement was false; (3) defendant intended to induce the plaintiff to act; (4) plaintiff reasonably relied on the truth of defendant's statement; and (5) as a result, plaintiff suffered damages. *Visco Fin. Servs., Ltd. v. Siegel*, No. 08 C 4029, 2008 WL 4900530, at *6 (N.D. Ill. Nov. 13, 2008).

Under Illinois law, the terms of "a written contract override[] all prior and contemporaneous negotiations and agreements regarding the same subject matter." *Id.* at *7. For example, in *Daimler Chrysler*, the District Court granted summary judgment in favor of the plaintiff and rejected an affirmative defense of fraudulent inducement where the defendant claimed that the plaintiff promised that despite the execution of the loan agreement, no enforceable contract would exist until the defendant's partner signed a personal guaranty. *Id.* In granting summary judgment, the court held that because the defendant had access to the document prior to signing, the defendant had equal knowledge of its contents and could not have justifiably relied on the lender's prior statements. *Id. See also Cozzi Iron & Metal, Inc. c. U.S. Office Equipment, Inc.*, 250 F.3d 570, 573 (7th Cir. 2001) ("[A]s long as the complaining party could have discovered the fraud by reading the contract and had the opportunity to do so, Illinois courts have refused to extend the doctrine of fraudulent inducement to invalidate contracts.").

10

In this case, Defendants' fraudulent inducement defense appears to be based on its allegations that GEBFS misrepresented the terms of the Loan, thereby inducing them to enter into the Loan documents, and that GEBFS misrepresented its intention to modify or extend the Loan. (Aff. Defenses ¶¶6-17.) Nothing in the Loan documents required GEBFS to modify the terms of the Loan or otherwise extend the payment terms – though GEBFS did in fact allow Borrower additional time to remedy its default. (*See* Ehret Aff. Ex. A; Aff. Defenses ¶15.) Thus, Defendants' alleged reliance on pre-contractual promises to forbear was not justified.

Moreover, parol evidence of contract negotiations is not admissible to vary or contradict the terms of a clear and unambiguous contract. *IAir Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 885 (Ill. 1999). Defendants' attempt in this case to introduce terms that vary from those of the final written agreement is barred by the explicit integration clause contained in the Loan Agreement, which states that the agreement cannot be "contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties." (Ehret Aff. Ex. A, § 11.12); *IAir Safety*, 706 N.E.2d at 885 (an integration clause "explicitly manifest[s] [the parties'] intention to protect themselves against misinterpretations which might arise from extrinsic evidence"); *In re Kmart Corp.*, 434 F.3d 536, 540 (7th Cir. 2006) (refusing to consider negotiations in interpreting a contract because, as stated in the integration clause, negotiations were superseded by the written contract). Defendants' affirmative defense of fraudulent inducement thus fails.

### D. DEFENDANTS' DURESS CLAIM IS LEGALLY INFIRM.

Economic duress, an affirmative defense to contract enforcement, is present when one party is (a) "induced by a wrongful act or threat of another to make a contract" (b) "under circumstances that deprive one of the exercise of one's own free will." *Hurd v. Wildman,*

11

*Harrold, Allen, and Dixon*, 707 N.E.2d 609, 614 (Ill. App. Ct. 1999). Defendants cannot establish either element. First, GEBFS acted within its contractual rights. An economic duress defense "cannot be predicated upon a demand that is lawful or upon doing or threatening to do that which a party has a legal right to do." *Id*. *See also Krilich v. Am. Nat'l Bank & Trust Co. of Chi.*, 778 N.E.2d 1153, 1162 (Ill. App. Ct. 2002) ("Ordinarily, a threat to break a contract does not constitute duress.") (citation omitted). In *Krilich*, for example, the court affirmed dismissal of a claim for economic duress made by a real estate purchaser who alleged he entered into a second modification of a purchase contract only after the developer threatened to breach the contract unless the amendment was executed. 778 N.E.2d at 1162. The court held that a party who enters a contract while merely under financial pressure or who agrees to unfavorable terms due to the other party's hard bargaining position has not suffered duress. *Id.* "Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated on the basis of duress." *Id.*

Defendants claim only that GEBFS changed the terms of the Loan package "just prior to the Closing." (Aff. Defense ¶ 9.) The pressure felt by Defendants to close the loan, however, was of their own making, as they admit to having signed a purchase contract for the property on which the due diligence option period had already lapsed and concede they had invested a substantial amount of money preparing to close the deal, prior to obtaining funding. *Id.* As such, Defendants claim that they had no choice but to accept the changes. *Id.* This scenario, even if true, does not state a valid claim for duress. As in *Krilich*, Defendants do not allege facts regarding any conduct by GEBFS that was wrongful or fraudulent. Rather, Defendants admit that they put themselves into a bad position, and as a result of their own actions, had to accept the terms proposed by GEBFS. Thus, Defendants' factual allegations do not establish duress.

Second, Defendants cannot establish, that the loan documents were executed while Defendants lacked free will.  To establish lack of free will while under duress, "one must demonstrate that the threat has left the individual 'bereft of the quality of mind essential to the making of a contract.'"  *Hurd*, 707 N.E.2d at 614 (citing *Alexander v. Standard Oil Co.*, 423 N.E.2d 578, 582 (Ill. App. Ct. 1981)).  In *Alexander*, the court affirmed dismissal of employees' claims for economic coercion and duress because the employees "ha[d] ample time for inquiry, examination, and reflection" on the employment agreements they entered into.  423 N.E.2d at 583.  Defendants cannot demonstrate that they were "bereft of the quality of mind" when the Loan or loan modifications were entered into, and thus the second element of economic duress, like the first, cannot be sustained.

In addition, a party who ratifies a contract by accepting its benefits, as Defendants did here by accepting the proceeds of the Loan and entering into several loan modification agreements, cannot later seek rescission of that contract by claiming to be "bereft of mind" when the contract was executed.  *See Alexander*, 423 N.E.2d at 583 (stating the fact that plaintiffs retained the benefits of the employment contracts created a rebuttable presumption that plaintiffs were not under duress when entering into the contracts); *Inland Land Appreciation Fund, L.P. v. County of Kane,* 800 N.E.2d 1232, 1239 (Ill. App. Ct. 2003) (affirming trial court's finding that plaintiffs who retained benefits under a contract for eight months ratified the contract in question and were not under duress).

### E. DEFENDANTS' EQUITABLE ESTOPPEL DEFENSE IS DEFICIENT.

The elements of equitable estoppel in Illinois are: (1) words or conduct amounting to a misrepresentation or concealment of material facts; (2) knowledge at the time the representations were made that the representations were false, or that the representation was made with gross negligence as to their truth; (3) the truth respecting the representations was unknown to the party

asserting estoppel at the time the representations were made and when they were acted upon; (4) the party against whom estoppel is claimed must intend or reasonably expect that the representations or concealment would be acted upon by the party asserting estoppel or the public generally; (5) the party asserting estoppel must have relied upon the representation in good faith to its detriment; and (6) the party claiming the benefit of the estoppel would be prejudiced if the other party is permitted to deny the falsity of the misrepresentation or concealment. *Household Fin. Servs., Inc. v. Northeastern Mortg. Inv. Corp.*, No. 00 C 0667, 2000 WL 816795, at *2 (N.D. Ill. June 22, 2000).

In this case, Defendants' equitable estoppel defense is devoid of factual support. As set forth above, at most Defendants have claimed that GEBFS negotiated the terms of an agreement and enforced that agreement, not that it engaged in any inequitable conduct. Defendants thus cannot establish any legal basis to foreclose GEBFS from exercising its contractual rights.

### F. DEFENDANTS' UNCLEAN HANDS DEFENSE IS BARRED.

"Under Illinois law, 'the clean hands doctrine operates to bar equitable remedies and does not affect legal rights.'" *Citadel Group Ltd. v. Washington Regional Medical Ctr.*, No. 07-CV-1934, 2009 WL 1329217, at *5 (N.D. Ill. May 13, 2009) (quoting *Am. Nat'l Bank & Trust Co. of Chicago v. Levy*, 404 N.E.2d 946, 948 (Ill. App. Ct. 1980)). In *Citadel*, for example, the court struck the defendant's affirmative defense of unclean hands because the complaint was for breach of contract, seeking damages at law and not in equity. *Id.* The same result is warranted here. GEBFS has sought only relief at law for Defendants' breach of their obligations under the Limited Joinder and Guaranty. As such, Defendants cannot prevail on this defense.

Even putting aside this fundamental deficiency, Defendants' claims do not support an affirmative defense of unclean hands. The doctrine of unclean hands prevents a party from

coming to equity and seeking relief while "taking advantage of his own wrong." *Schivarelli v. Chicago Transit Auth.*, 823 N.E.2d 158, 168 (Ill. App. Ct. 2005) (citing *Jaffe Commercial Fin. Co. v. Harris*, 456 N.E.2d 224, 228 (Ill. App. Ct. 1983)). Application of the doctrine is disfavored in Illinois, and is appropriate only if there is fraud or bad faith. *Id*. In *Schivarelli*, the Illinois Appellate Court reversed the Circuit Court's finding in favor of the plaintiffs who asserted an unclean hands affirmative defense because the plaintiffs failed to present evidence of either fraud or bad faith. *Id*. Asserting contract rights does not constitute bad faith. *See*, *e.g.*, *Gore v. Indiana Ins. Co.*, 876 N.E.2d 156, 163 (Ill. App. Ct.) (declining to find bad faith when a company acted within its contract rights, because "we cannot now allow [plaintiff] to claim that defendants acted in bad faith in computing the prices he agreed to pay"); *cf. Long v. Kemper Life Ins. Co.*, 553 N.E.2d 439, 441 (Ill. App. Ct. 1990) (holding plaintiffs who intentionally misrepresented the state of a decedent's health when applying for a life insurance policy acted in bad faith and were barred by the doctrine of unclean hands from seeking equitable relief). Defendants' allegations illustrate only that GEBFS was acting within its rights under the Loan documents. Thus, Defendants cannot establish that GEBFS has acted in bad faith or that it came to a court of equity with unclean hands.

## CONCLUSION

For the foregoing reasons, GEBFS respectfully requests that this Court enter summary judgment against Defendants Silverman and Brauss on Count I and enter judgment in favor of GEBFS in the amount of $32,896,302.24, plus additional attorney's fees, costs, and expenses; and enter summary judgment against all Defendants on Count II, and enter judgment in favor of GEBFS in the amount of $17,400,000.00, plus additional attorney's fees, accrued interests, costs, and expenses.

15

Dated: September 21, 2009   Respectfully submitted,

**GENERAL ELECTRIC BUSINESS FINANCIAL SERVICES, INC.**

By: /s/  Dawn M. Canty
       One of Its Attorneys

Timothy J. Patenode
Dawn M. Canty
Heather Kuhn O'Toole
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe
Chicago, IL 60661
(312) 902-5200

## CERTIFICATE OF SERVICE

   The undersigned, an attorney, certifies that she caused a true and correct copy of the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT to be filed using the CM/ECF system on September 21, 2009, which will send notification of such filing to the registered CM/ECF users listed below:

    Steven P. Blonder, Esq.
    Shawn M. Staples, Esq.
    Much Shelist Denenberg
    Ament & Rubenstein P.C.
    191 North Wacker Drive, Suite 1800
    Chicago, Illinois 60606

               /s/ Dawn M. Canty