**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GENERAL ELECTRIC BUSINESS ) <br> FINANCIAL SERVICES, INC., f/k/a ) <br> MERRILL LYNCH BUSINESS FINANCIAL ) <br> SERVICES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DONALD L. SILVERMAN, ERIC W. ) <br> BRAUSS, and TODAY REALTY ) <br> ADVISORS, INC., ) <br> ) <br> Defendants. ) | Case No. 09 C 364 <br><br> Judge Robert W. Gettleman <br><br> Magistrate Judge Nan R. Nolan |

**DEFENDANTS' RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendants Donald L. Silverman, Eric W. Brauss, and Today Realty Advisors, Inc., by their attorneys, respond to Plaintiff General Electric Business Financial Services, Inc.'s motion for summary judgment as follows:

**INTRODUCTION**

Plaintiff's Motion for Summary Judgment does not deny the factual basis of the Defendants' affirmative defenses. Instead, Plaintiff attempts to argue that the affirmative defenses are invalid as a matter of law. As set forth in detail below, Plaintiff is wrong. Contrary to Plaintiffs' assertions, Defendants' affirmative defenses of fraud in the inducement, duress, equitable estoppel, and unclean hands all constitute valid defenses that prohibit the entry of judgment on Plaintiff's motion for summary judgment. Moreover, Defendants have not waived their right to assert the affirmative defenses or otherwise defend their rights in the instant action. Finally, despite Plaintiff's arguments to the contrary, the Illinois Credit Agreement Act does not

defeat Defendants' affirmative defenses. Therefore, Plaintiff's motion for summary judgment should be denied.

## STATEMENT OF FACTS

In 2007, Margaux Development Company ("MDC") and Today Realty Advisors, Inc. ("TRA") teamed up to create a mixed use real estate development in Frisco, Texas. (SOF ¶ 22.) In order to facilitate the development, Margaux Warren Park Partners, Ltd. ("Warren Park") was established to own the property. (SOF ¶ 24.) Merrill Lynch was chosen as the lender to finance the transaction and in the weeks prior to closing the loan, Merrill Lynch, through its employee William Ballent, told the representatives at TRA that so long as they were working diligently on the Warren Park project and making reasonably prompt progress on the project, Merrill Lynch would make necessary modifications, extensions and accommodations as needed in order for completion of the project. (SOF ¶¶ 25, 26.)

The loan with Merrill Lynch was structured as a typical land development loan in that a portion of the loan was funded to enable the borrower to purchase the land and pay various fees, with the remainder held for monthly draws and interest reserves. (SOF ¶ 27.) Accordingly, Merrill Lynch had issued a loan commitment and application with the terms of the Loan approximately 40 days prior to Closing, which did not include a provision for a loan paydown on the first anniversary date. (SOF ¶ 29.) Further, in order to issue the loan, Merrill Lynch required Defendants TRA, an affiliated company of Eric Brauss; Eric Brauss, individually; and Donald Silverman, a principal of MDC, to issue guarantees and/or joinders. (SOF ¶ 28.)

Mere hours before closing, John Petrovsky and William Ballent, on behalf of Merrill Lynch, told Warren Park that in order to receive the loan committee's approval, there would need to be substantial changes to the terms of the loan package, requiring Warren Park, by the

first anniversary date of the Loan, to either: (a) make a $2,500,000 payment on the Loan; or, (b) have sold at least 10 acres of the land at $10.80 per square foot and have certain entitlements from the City of Frisco.  (*Id.*)  These terms were neither originally included in the loan commitment nor required by the documentation prior to the final set of documents.  (*Id.*)  Moreover, Merrill Lynch knew that the due diligence period on the underlying property had expired and the $250,000 deposit was no longer refundable.  (*Id.*)

Merrill Lynch claimed that the reason for the last minute change was because the standard fees associated with the loan package were too high.  (*Id.*)  The loan package for this transaction included a number of standard fees, including equity placement fees for TRA, acquisition fees for Brauss and Silverman, a broker's fee, and approximately $400,000 in lender fees for Merrill Lynch.  (*Id.*)  At all material times, however, Merrill Lynch knew the amount of the above-described fees.  (*Id.*)  Additionally, Merrill Lynch knew these fees would be paid from the loan proceeds, based upon discussions with Merrill Lynch representatives, who stated that the fees were in the budget and approved by Merrill Lynch.  (*Id.*)

Because Merrill Lynch waited until immediately prior to the closing to change the conditions of the loan, the signing parties, who had signed a purchase contract for the property on which the due diligence option period had already lapsed and who had invested a substantial amount of money preparing to close on the deal, had no choice but to accept Merrill Lynch's predatory, extortive changes to the loan.  (SOF ¶ 30.)  In fact, had these onerous deal terms not been accepted, there would have been a default under the purchase contract, and the parties would have been deprived of the ability to purchase the property and would have lost over $800,000 in fees and expenses incurred in anticipation of closing.  (*Id.*)  Merrill Lynch essentially did a "bait and switch."  (*Id.*)

In May 2008, Warren Park was required to comply with the last minute changes and make a loan payment or sell part of the land based upon certain requirements; however, now Warren Park was working with GE, the company that purchased the loan agreement from Merrill Lynch. (SOF ¶¶ 33, 34.) Although Warren Park had a potential buyer for part of the property, through no fault of Warren Park, the City had failed to issue necessary approvals. (SOF ¶ 34.) When Warren Park sought additional time from GE for the approvals, GE refused work with Warren Park, as it previously represented it would do, and required Warren Park to enter into a forbearance agreement for $250,000. (SOF ¶¶ 35, 36.)

By mid-July 2008, Warren Park had a second offer on the land, but was still awaiting approval from the City. (SOF ¶ 37.) When Warren Park approached a representative at GE, Matthew Ehret, for an extension of time, he indicated that the proposal sounded good, but that it would need loan committee approval. (SOF ¶ 37.) But, by July 18, 2008, without explanation, GE notified Warren Park that it would not extend or alter the loan and that if Warren Park did not (a) pay an additional $2,500,000 by July 25, 2008, (b) agree to move up the maturity date from May 2009 to January 2009, and, (c) agree that no further draws on the loan would be allowed, GE would begin foreclosure proceedings immediately. (SOF ¶ 38.) Warren Park could not agree to the terms because in addition to the $34,800,000 in loan proceeds, Warren Park raised approximately $8,000,000 in equity from investors. (SOF ¶ 40.)

**STANDARD OF REVIEW**

Summary judgment is appropriate only if the pleadings and evidence in the record demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment will not lie if "the evidence is such that a reasonable jury

could return a verdict in favor of the non-moving party." *Id*. at 248. All reasonable inferences must be drawn in the non-moving party's favor. *Id.* at 255. Here, after viewing the facts and reasonable inferences from the facts in a light most favorable to Defendants, it is evident that that there are issues of material fact. Although Plaintiff argues that Defendants do not have a legal basis to raise their affirmative defenses, Plaintiff does not contest the material facts raised thereby. Therefore, as fully demonstrated below, because Defendants are entitled to raise the affirmative defenses pled, the issue of material fact that comprise the affirmative defenses defeat Plaintiff's motion for summary judgment.

## ARGUMENT

**I.     Defendants Have Not Waived The Right To Assert Affirmative Defenses.**

Plaintiff incorrectly claims that Defendants have waived their ability to raise affirmative defenses. In support of its argument, Plaintiff points to boilerplate language in the Limited Joinder and Guaranty that purports (in the broadest of language) to prohibit Defendants from asserting any affirmative defenses whatsoever. (*See, e.g.,* Am. Comp., Ex. A, Limited Joinder ¶2) ("each Principal waives all rights and defenses.") Illinois courts, however, have refused to enforce such expansive waivers to nullify the types of affirmative defenses at issue here. *See, e.g., Chemical Bank v. Paul*, 244 Ill. App. 3d 772, 783, 614 N.E.2d 436, 442-43 (1st Dist. 1993) (declining to find that the guarantor waived its right to assert an affirmative defense under the covenant of good faith and fair dealing, despite waiver of all defenses in guaranty agreement). These courts found that the enforcement of such waivers would violate Illinois public policy. *Id. See also*, *Douglas v. Tonigan*, 830 F. Supp. 457 (N.D. Ill. 1993).

In *Douglas*, the court refused to enforce a waiver provision, similar to the one at issue here, to invalidate an affirmative defense based on fraud. *Douglas*, 830 F. Supp. at 462. The

court held that it would violate the public policy of Illinois to enforce such a waiver provision. Specifically, the court determined that allowing the defendant to avoid the consequences of misrepresentations based upon a boilerplate waiver provision in a guaranty would (1) compromise the integrity of court; (2) allow the party guilty of fraud to escape consequences; and (3) undermine public policy underlying fraud actions. *Id.*

Likewise, the broad boilerplate waiver language at issue here should not apply to the specific affirmative defenses asserted by Defendants, including fraud and the other defenses based upon violations of trust and intentional wrongdoing. Plaintiff should not be permitted to enjoy the fruit of a fraud or other wrongdoing based upon contract language that does not promote important principles of public policy. Permitting a waiver of all of the Defendants' defenses would (1) compromise the integrity of Court, (2) allow the party guilty of fraud to escape consequences, and (3) undermine policies behind fraud actions. *Douglas*, 830 F. Supp. at 462.

The cases Plaintiff cites in supposed support of waiver actually provide no support for its claim that a broad waiver provision will nullify claims of fraud and other wrongdoing. In not one of Plaintiff's cases did a court reject any of the affirmative defenses at issue here based on the broad boilerplate waiver language. Indeed, in most of the cases cited by Plaintiff, the waiver provision at issue was not broad at all, but rather specifically targeted to the action complained of by the defendant. *See, e.g., Du Quoin State Bank v. Daulby*, 115 Ill. App. 3d 183, 450 N.E.2d 347 (5th Dist. 1983); *FDIC v. Rayman*, 117 F.3d 994 (7th Cir. 1997); *Chicago Exhibitors Corp. v. Jeepers! Of Illinois, Inc.*, 376 Ill. App. 3d 599, 876 N.E.2d 129 (1st Dist. 2007) ; *Brzozowski v. Northern Trust Co.*, 248 Ill. App. 3d 95, 618 N.E.2d 405 (1st Dist. 1993).

For example, in *Du Quoin*, the court was not asked to enforce a broad waiver of

defenses, but rather a narrow waiver provision that specifically waived any right to claim that a sale of the collateral property discharged the debt. This specific waiver provision, held the court, barred a guarantor from claiming that the bank's purchase of the property in foreclosure discharged the guarantee. *Du Quoin State Bank*, 115 Ill. App. 3d at 186, 450 N.E.2d at 349. *Du Quoin* simply has no relevance to the issues here regarding the enforceability of a boilerplate waiver provision to a defense of fraud.

Similarly, inapposite to the issues at bar is another case cited by Plaintiff, *FDIC v. Rayman*, 117 F.3d 994 (7th Cir. 1997). As was true in *Du Quoin*, the *FDIC* court was only asked to enforce a narrowly-tailored waiver provision, not a broad provision. Specifically, the case involved a provision where the guarantor waived its right to notice and approval of the sale of the collateral. The guaranty, however, contained language that the guarantor specifically waived the right to "any and all notices of whatever kind or nature…." *Id.* At 997. Such a provision, said the court, nullified the guarantor's claim that he was not liable for the debt because he had not received notice that the collateral was sold for a diminished value, allegedly increasing the risk of the guaranty. *FDIC*, 117 F.3d at 999. The court said that the guaranty "expressly" waived the guarantors right to such notice. *Id.* At 999. Here, on the other hand, Plaintiff is not seeking to enforce a specific waiver provision, but instead seeks to enforce broad language that would deny Defendants any defense at all. The *FDIC* court's decision regarding specific waiver provisions has no application here.

The same is true of two other cases cited by Plaintiff to incorrectly suggest that a broad waiver of defenses has been recognized by Illinois courts. *Chicago Exhibitors Corp. v. Jeepers! Of Illinois, Inc.*, 376 Ill. App. 3d 599, 876 N.E.2d 129 (1st Dist. 2007) and *Brzozowski v. Northern Trust Co.*, 248 Ill. App. 3d 95, 618 N.E.2d 405 (1st Dist. 1993). Once again, the

cited cases provide no support for Plaintiff's argument because they involve only narrowly drawn waiver provisions, as opposed to broad waivers like the one at issue here. The *Chicago Exhibitors* case concerned whether a guarantor was released upon modification of the collateral, despite language in the guaranty that "*specifically* provided that the guaranty would remain intact regardless of changes and modifications to the lease." 376 Ill. App. 3d at 609, 876 N.E.2d at 138 (emphasis supplied). *Brzozowski* dealt with whether a guarantor could complain about the creditor's decision to release the collateral securing the guaranty, despite a waiver specifically permitting such a release. 248 Ill. App. 3d at 101-02, 618 N.E.2d at 410. Both courts upheld the specific waiver provision at issue, allowing the lender to engage in the actions that were specified in the waiver. The holding of those courts, however, involving narrowly-drawn waiver provisions, has no relevance to the issue here of whether a broad boilerplate waiver can allow a party like Plaintiff to evade any culpability for fraud or other malfeasance.

Plaintiff's remaining citations actually support Defendants because they recognize that public policy considerations will void enforcement of a broad waiver provision against the type of defenses at issue here. *See Chemical Bank v. Paul*, 244 Ill. App. 3d 772, 783, 614 N.E.2d 436, 442-43 (1st Dist. 1993) and *Finova Capital Corp. v. Slyman*, No. 01 C 6244, 2002 WL 318294 (N.D. Ill. Feb. 25, 2002) (Gettleman, J). In *Chemical Bank*, the court was presented with a broad waiver, akin to the one here, that waived "*all present and future defenses to the payment of the debt*." *Chemical Bank*, 244 Ill. App. 3d at 775, 614 N.E.2d at 437 (emphasis original). Despite the broad waiver language, the *Chemical Bank* court determined that the guarantor did not waive the right to assert an affirmative defense under the covenant of good faith and fair dealing. 244 Ill. App. 3d at 783, 614 N.E.2d at 442. The court cited public policy considerations in thus holding that a broad waiver provision in a guarantee could not exculpate

8

a lender who had engaged in bad faith.

In *Finova*, the court also made clear that "public policy concerns must be taken into account by courts when determining the effect and extent of such waiver." *Id.* at *2. Plaintiff has cited to no case law that supports its claim that the boilerplate waiver provision at issue can be used to void Defendants' affirmative defenses. This is not surprising because the case law, including cases cited by Plaintiff itself, makes it clear that public policy will not allow such a result. Therefore, because Defendants are entitled to assert affirmative defenses, the issues of material fact raised thereby require that the motion for summary judgment be denied.

## II.    Each of Defendants' Affirmative Defenses Defeat the Motion for Summary Judgment.

### A.    Fraud in the inducement raises an issue of material fact.

Plaintiff does not deny the factual basis for Defendants' defense of fraud in the inducement. Nor does Plaintiff deny that under Illinois law, one induced to contract through fraud may, at his election, rescind the contract. *Id.* Plaintiff, however, claims that the facts alleged do not support the defense. Plaintiff is wrong.

Defendants' claim for fraudulent inducement is based on the fact that Plaintiff told Defendants that it would make a loan using standard payment terms, when in fact Plaintiff was engaging in a "bait and switch" in which it changed the payment terms at the last minute. (SOF ¶¶ 26, 30.) And the claim is also based on the fact that Plaintiff told Defendants that so long as they were working diligently on the Warren Park project and making reasonably prompt progress, Plaintiff would make necessary modifications, extensions or accommodations when in fact this was not true. (SOF ¶ 26.)

Defendants relied on these promises when they proceeded with the Warren Park transaction. (*Id.*) Also, Defendants have suffered damages as a result of the reliance on

9

Plaintiff's misrepresentations. Not only were Defendants required to accept the last minute changes or face substantial penalties, but Defendants entered a contract where they stood to lose approximately $8,000,000 in equity from investors and face suit from Plaintiff. (SOF ¶¶ 30, 40.)

In its motion, Plaintiff argues that because Defendants saw the contract language, including the changed terms, the terms of the contract are enforceable and no fraud occurred. But, Defendants have alleged that they only learned of the changed language mere hours before they were required to sign, and well past the time when they could have extricated themselves from the underlying purchase contract during the due diligence period. (SOF ¶¶ 29, 30.) In such a circumstance, a party like Plaintiff cannot evade its wrongdoing by relying on generic language in the parties' contract. *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332 (7th Cir. 1992).

In *Havoco*, the defrauded party signed the fraudulently induced contracts knowing of the fraud, but after it had been forced into a position in which it could do nothing else. In that situation, held the court, knowledge of the truth does not negate the detrimental reliance. *Id.* at 1342. The *Havaco* court thus held that a party who entered into a contract after learning of fraudulent acts nevertheless could sustain a claim for fraud when there is "no way to avoid the damage by the time the fraud was discovered." *Id.*

Here, Defendants only learned of the fraud related to the changed terms moments before they were required to sign the contract. By the time that they learned of the fraudulent "bait and switch," Defendants had signed a purchase contract for the subject property upon which the due diligence option period had already lapsed and had invested a substantial amount of money preparing to close the deal. (SOF ¶¶ 29, 30.) Had the change in terms not been accepted, there would have been a default under the purchase contract and the Defendants would have lost over

$800,000 in fees and expenses. (*Id.*) Thus, because Defendants had no way to avoid the damage by the time the fraud was discovered, their claim for fraudulent inducement is a valid one. Moreover, given the additional fraudulent misrepresentations made about modifications to the agreement, Defendants were further induced to enter into the guaranty, and thus, sustaining their claim for fraudulent inducement.[1]

### B. Economic duress raises another issue of material fact.

Defendants' affirmative defense of economic duress also defeats the motion for summary judgment. Economic duress is a condition where one is induced by wrongful conduct or threatened to make a contract under circumstances that deprive one the ability to exercise of free will. *Krilich v. Am. Nat'l Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 778 N.E.2d 1153 (2d Dist. 2002). Application of the doctrine renders the contract voidable. *Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680, 682 (7th Cir. 1970) (applying Illinois law).

Plaintiff alleges that it merely enforced a contract right and, therefore, Defendants' economic duress defense is inadequate. Plaintiff misconstrues the affirmative defense pled. While it is generally true that duress does not exist where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances, that is **not** the case when "the conduct of the party obtaining the advantage is shown to be tainted with some degree of fraud or wrongdoing." *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1343 (7th Cir. 1992) (applying Illinois law) (emphasis original). Here, Defendants' basis for alleging economic duress is indeed based upon fraud and, thus, a claim for duress is valid. Specifically, Plaintiff misrepresented the terms of the loan agreement in order to perform a "bait

---

[1] Although Plaintiff argues the parol evidence rule bars the fraud defense, "the parol evidence rule does not preclude a party from presenting evidence that he was fraudulently induced into executing an agreement." *FDIC v. v. Bruno*, 777 F. Supp. 1432, 1439 (N.D. Ill. 1991).

and switch" that Plaintiff knew would force Defendants to enter into a guaranty for a loan on substantially different terms. (SOF ¶ 30.) Defendants' allegations of fraud bring their claim squarely within the bases for a claim of economic duress. 971 F.2d at 1343.

Plaintiff also incorrectly asserts that Defendants had free will to accept or decline the contract. As the Court found in *Havaco*, lack of free will exists when, based on the other parties' fraud, a party is left with no economic choice but to enter into the contract. *Havoco* 971 F.2d at 1343. Here, as set forth above, by the time the terms were changed, Defendants had signed a purchase contract for the subject property upon which the due diligence option period had already lapsed and had invested a substantial amount of money preparing to close the deal. (SOF ¶ 30.) Had the change in terms not been accepted, there would have a default under the purchase contract and the Defendants would have lost over $800,000 in fees and expenses. (*Id.*)

Moreover, given that the changes in the terms were made immediately before the guaranty was to be signed, Defendants did not even have ample time for the inquiry, examination, and reflection to make it less likely that they would be "overborne by economic duress so as to render a contract violable." *Cf.*, *Alexander v. Standard Oil Co.*, 97 Ill. App. 3d 809, 423 N.E.2d 578 (5th Dist. 1981). Thus, due to Plaintiff's fraudulent last minute "bait and switch" Defendants had no choice but to accept the guaranty, creating an issue of fact to defeat the motion for summary judgment.[2]

### C. Equitable estoppel denies Plaintiff relief.

The purpose of equitable estoppel is to prevent fraud and injustice so that a party may not

---

[2] To the extent Plaintiff argues ratification of the contract, such an argument fails because Plaintiff's coercing influence, including threats not to cooperate to ensure completion of the project, had not ceased. *See, e.g., Harris v. Flack*, 289 Ill. 222, 124 N.E. 377 (1919).

take advantage its own wrongdoing. *Tegeler v. Indus. Comm'n*, 173 Ill. 2d 498, 672 N.E.2d 1126 (1996). The elements necessary to prove equitable estoppel are quite similar to fraud and include: "(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representation; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-314, 751 N.E.2d 1150, 1157 (1997).

In the instant case, Defendants' affirmative defense of equitable estoppel raises an issue of material fact. As previously discussed, Plaintiff knowingly misrepresented that the loan conditions were different than those that it actually forced upon Defendants in a "bait and switch." Further, Defendants reasonably relied upon Plaintiff's misrepresentations. (SOF ¶ 32.) Defendants were clearly prejudiced by their reliance on Plaintiff's misrepresentations, because they relied on those representations in allowing the underlying transaction to proceed, thus exposing Defendants to terms that led to foreclosure. Therefore, because Defendants have asserted the affirmative defense of equitable estoppel, the motion for summary judgment should be denied.

      **D.**    **The doctrine of unclean hands prohibits Plaintiff's action.**

Plaintiff's action fails due to application of the unclean hands doctrine. Unclean hands

prohibits a party from taking advantage of its own wrong.[3] *Thompson Learning, Inc. v. Olympia Props., LLC*, 365 Ill. App. 3d 621, 634, 850 N.E.2d 314, 325 (2d Dist. 2006). For the doctrine of unclean hands to apply, the party's misconduct must consist of fraud or bad faith. *Id.* Here, as set forth in detail above, Defendants have clearly alleged that Plaintiff committed fraudulent misrepresentations in the inducement of the contract. (*See* First Affirmative Defenses). Moreover, the affirmative defenses demonstrate that Plaintiff acted in bad faith throughout the contractual relationship by attempting to de-rail the project in hopes of acquiring the underlying property. (*See generally* Affirmative Defenses and SOF ¶¶ 35-40.) Although Plaintiff once again suggests it was merely exercising a contractual right, Defendants have asserted conduct consisting of fraud or bad faith. Therefore, because Plaintiff should not be permitted to take advantage of its own wrong, the doctrine of unclean hand prohibits its action.

### III. The Illinois Credit Agreement Act Does Not Apply To Bar Defendants' Affirmative Defenses.

Finally, the Illinois Credit Agreement Act ("Act") does not bar Defendants' affirmative defenses. Plaintiff argues that the affirmative defenses are, in essence, Defendants' attempts to introduce oral modifications to the contract and cites several cases that hold that such modifications are barred by the Act if not in writing. But the affirmative defenses do not seek such a modification. Rather, the defenses of fraudulent inducement and economic duress operate to invalidate the underlying contract and the defense of unclean hands simply prohibits

---

[3] To the extent that Plaintiff argues that the doctrine only applies to equitable defenses, "some courts in Illinois have found that an unclean hands defense may be brought in law as well as equity." *Continental Bank v. Modansky*, 129 B.R. 159, 164 (N.D. Ill. 1991) *citing Urecal v. Masters*, 413 F. Supp. 873, 876 (N.D. Ill. 1976) *and FEL Publ'ns v. Catholic Bishop of Chicago*, 506 F. Supp. 1127, 1137 (N.D. Ill.1981). Nevertheless, because Defendants' affirmative defenses would have the effect of rescinding the contract, equitable principles apply. *23-25 Bldg. P'Ship v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 756, 886 N.E.2d 1156, 1163 (1st Dist. 2008) ("Rescission is an equitable remedy.").

a party from taking advantage of its wrongs. *See e.g., Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680, 682 (7th Cir. 1970) (applying Illinois law); *Thompson Learning, Inc. v. Olympia Props., LLC*, 365 Ill. App. 3d 621, 634, 850 N.E.2d 314, 325 (2d Dist. 2006).

The cases cited by Plaintiff, while barring modification, do not explore the ramifications of a nullification of a contract in the context of the Act's prohibitions on oral agreements or modifications. Because Defendants do not seek to amend the language of the contract, but rather have grounds to invalidate the written contract or otherwise prohibit Plaintiff from seeking damage under the guaranty, the Act should not apply to the instant matter.[4]

WHEREFORE, for all of the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion for Summary Judgment and for such other and further relief as this Court deems just.

Dated: November 12, 2009    Respectfully submitted,

          **DONALD L. SILVERMAN, ERIC W. BRAUSS and TODAY REALTY ADVISORS, INC.**

          By: /s/ Steven Blonder
              One of Its Attorneys

Steven P. Blonder
Joanne A. Sarasin
Shawn M. Staples
Much Shelist Denenberg
   Ament & Rubenstein P.C.
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60606

---

[4] Note that Defendants' argument for duress is distinct from the affirmative defense presented in *Westinghouse Elec. Corp. v. McLean*, 938 F. Supp. 487 (N.D. Ill. 1996). There, the basis for alleging economic duress was fraud based upon statements that the guarantees would not be enforced and allegations that funds were not dispersed, without an obligation to do so. 938 F. Supp. At 493. Here, on the other hand, economic duress is not based on this type of fraud but rather on a last minute "bait and switch" in the in terms of the written contract which, under the circumstances, Defendants were given no choice but to sign. (Affirmative Defense, ¶¶9-10.)

## **CERTIFICATE OF SERVICE**

I, Steven P. Blonder, an attorney, certify that on November 12, 2009, I electronically filed **Defendants' Response to Plaintiff's Motion for Summary Judgment**, with the Clerk of Court using the CM/ECF system, which will send notification of such filings to the following:


Timothy J. Patenode
Dawn M. Canty
Heather Kuhn O'Toole
Katten Muchin Rosenman LLP
525 West Monroe
Chicago, Illinois 60661
(312) 902-5200


/s/Steven P. Blonder