**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GENERAL ELECTRIC BUSINESS FINANCIAL SERVICES, INC., f/k/a MERRILL LYNCH BUSINESS FINANCIAL SERVICES, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 09 C 364 |
| v. | ) ) | Judge Robert W. Gettleman |
| DONALD L. SILVERMAN, ERIC W. BRAUSS, and TODAY REALTY ADVISORS, INC., | ) ) ) ) | Magistrate Judge Nan R. Nolan |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION TO STRIKE AFFIRMATIVE DEFENSES**

Defendants Donald L. Silverman, Eric W. Brauss, and Today Realty Advisors, Inc., by their attorneys, respond to Plaintiff General Electric Business Financial Services, Inc.'s motion to strike affirmative defenses as follows:

**<u>INTRODUCTION</u>**

Although Plaintiff has routinely accused Defendants of unnecessary motion practice in an attempt to delay proceedings in this matter, Plaintiff's Motion to Strike Affirmative Defenses demonstrates that it is, in fact, the Plaintiff who is needlessly squandering time and resources. Indeed, as this Court has previously noted:

> If a defense is clearly irrelevant, then it will likely never be raised again by the defendant and can be safely ignored. If a defense may be relevant, then there are other contexts in which the sufficiency of the defense can be more thoroughly tested with the benefit of a fuller record-such as on a motion for summary judgment. Accordingly, courts are typically reluctant to decide disputed or substantial issue of law on a motion to strike.

*Puritan Fin. Corp. v. Steritek, Inc.*, No. 95 C 2106, 1995 WL 715863 at \*2 (N.D. Ill. Dec. 4, 1995) (Gettleman, J.) *quoting Van Schouwen v. Connaught Corp.*, 782 F. Supp. 1240, 1245 (N.D. Ill. 1991). Perhaps recognizing the uselessness of the motion to strike, Plaintiff has since filed a motion for summary judgment.

Regardless of whether a motion to strike is the proper vehicle to address Plaintiff's arguments, the motion should be denied. First, Defendants have not waived their right to assert the affirmative defenses or otherwise defend their rights in the instant action. Second, Defendants have sufficiently pled each of the affirmative defenses of fraud in the inducement, duress, equitable estoppel, and unclean hands. Third, despite Plaintiff's arguments to the contrary, the Illinois Credit Agreement Act does not defeat Defendants' defenses. Therefore, because Defendants have sufficiently pled their affirmative defenses and because Plaintiff's motion is an unnecessary distraction, the motion to strike affirmative defenses should be denied.

## STANDARD OF REVIEW

"Motions to strike affirmative defenses are generally disfavored in this circuit because often times they are employed for the sole purpose of causing delay." *Nat'l Council on Comp. Ins., Inc. v. Am. Int'l Group, Inc.*, No. 07 C 2898, 2009 WL 466802, at \*4 (N.D. Ill. Feb. 23, 2009) (Gettleman, J.) *citing Heller Fin., Inc. v. Midwhey Powder, Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Accordingly, a court will not strike affirmative defenses if they are sufficient as a matter of law or if they present questions of law or fact. *Tappia v. Richardson*, No. 96 C 5759, 1997 WL 106119, at \*1 (N.D. Ill. Feb. 12, 1997) (Gettleman, J.) *citing Heller Fin., Inc.*, 883 F.2d at 1294. "[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Id. citing Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 188 (3d Cir. 1986).

Affirmative defenses are pleadings and, therefore, are subject to the liberal pleading requirements of the Federal Rules of Civil Procedure. *Heller Fin., Inc.*, 883 F.2d at 1294. Under Federal Rule of Procedure 8(b), a defense need only be stated in 'short and plain terms.' *Leatherman v. Tarrant County Narcotics Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160 (1993). Thus, there is a three-part test to determine whether affirmative defenses are proper:

> (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge— in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient.

*Nat'l Council on Comp. Ins., Inc.*, 2009 WL 466802, at *5 *quoting Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 802-803 (N.D. Ill. 2000). Defendants' affirmative defenses clearly meet this three-part test and, therefore, should not be stricken.

In Plaintiff's motion to strike, Plaintiff inaccurately alleges that Defendants' affirmative defenses are not pled in a simple, concise, or direct manner. In so doing, Plaintiff ignores that affirmative defenses are subject to a liberal pleading standard under the Federal Rules of Procedure. *Heller Fin., Inc.*, 883 F.2d at 1294. Here, Defendants' affirmative defenses fully comply with Rule 8. Plaintiff's criticism of the affirmative defenses appears to be the inclusion of a factual background; however, it is difficult to image how providing additional information and context would in any way render the affirmative defenses insufficient. Moreover, despite Plaintiff's argument in opposition, the factual background is incorporated into each affirmative defense with the language: "Defendants assert the following facts common to their affirmative defenses." (Ans. to Compl., p. 6.)

Additionally, Plaintiff's allegation that the affirmative defenses provide too much information is contradicted in its own motion to strike, with the Plaintiff later arguing that there

is insufficient detail alleging fraud or equitable estoppel.  (Mot. at p. 10, n.3., 13)  Regardless, Defendants' allegations meet the threshold pleading requirements under the Federal Rules. Therefore, because Defendants' affirmative defenses are sufficiently pled, the affirmative defenses comply with the liberal pleading standard of the Federal Rules of Civil Procedure.

## ARGUMENT

### I.       Defendants Have Not Waived The Right To Assert Affirmative Defenses.

Simply wrong is Plaintiff's contention that Defendants cannot pursue their affirmative defenses because of some sort of waiver.  In support of the claimed waiver, Plaintiff points to boilerplate language in the Limited Joinder and Guaranty that purports (in the broadest of language) to prohibit Defendants from asserting any affirmative defenses whatsoever.  (*See, e.g.,* Am. Comp., Ex. A, Limited Joinder ¶2) ("each Principal waives all rights and defenses.") Illinois courts, however, have refused to enforce such waivers to nullify the types of affirmative defenses at issue here.  *See, e.g., Chemical Bank v. Paul*, 244 Ill. App. 3d 772, 783, 614 N.E.2d 436, 442-43 (1st Dist. 1993) (declining to find that the guarantor waived its right to assert an affirmative defense under the covenant of good faith and fair dealing, despite waiver of all defenses in guaranty agreement).  These courts found that the enforcement of such waivers would violate Illinois public policy.  *Id.  See also*, *Douglas v. Tonigan*, 830 F. Supp. 457 (N.D. Ill. 1993).

In *Douglas*, the court refused to enforce a waiver provision, similar to the one at issue here, to invalidate an affirmative defense based on fraud.  *Douglas*, 830 F. Supp. at 462.  The court held that it would violate the public policy of Illinois to enforce such a waiver provision. Specifically, the court determined that allowing the defendant to avoid the consequences of misrepresentations based on a boilerplate waiver provision in a guaranty would (1) compromise

the integrity of court; (2) allow the party guilty of fraud to escape consequences: and (3) undermine public policy underlying fraud actions.  *Id.*

Likewise, the broad boilerplate waiver language at issue here should not apply to the specific affirmative defenses asserted by Defendants, including fraud and the other defenses based on violations of trust and intentional wrongdoing.  Plaintiff should not be permitted to enjoy the fruit of a fraud or other wrongdoing based upon contract language that does not promote important principles of public policy.  Permitting a waiver of all of the Defendants' defenses would (1) compromise the integrity of Court; (2) allow the party guilty of fraud to escape consequences; and (3) undermine policies behind fraud actions. *Douglas*, 830 F. Supp. at 462.

The cases Plaintiff cites in supposed support of its waiver argument actually provide no support for its claim that a broad waiver provision will nullify claims of fraud and other wrongdoing.  In not one of Plaintiff's cases did a court reject any of the affirmative defenses at issue here based on the broad boilerplate waiver language.  Indeed, in most of the cases cited by Plaintiff, the waiver provision at issue was not broad at all, but rather specifically targeted to the action complained of by the Defendant.  *See, e.g., Du Quoin State Bank v. Daulby*, 115 Ill. App. 3d 183, 450 N.E.2d 347 (5th Dist. 1983); *FDIC v. Rayman*, 117 F.3d 994 (7th Cir. 1997); *Chicago Exhibitors Corp. v. Jeepers! Of Illinois, Inc.*, 376 Ill. App. 3d 599, 876 N.E.2d 129 (1st Dist. 2007) ; *Brzozowski v. Northern Trust Co.*, 248 Ill. App. 3d 95, 618 N.E.2d 405 (1st Dist. 1993).

For example, in *Du Quoin* the court was not asked to enforce a broad waiver of defenses, but rather a narrow waiver provision that specifically waived any right to claim that a sale of the property at issue discharged the debt.  This specific waiver provision, held the court, barred a

guarantor from claiming that the bank's purchase of the property in foreclosure discharged the guarantee. *Du Quoin State Bank*, 115 Ill. App. 3d at 186, 450 N.E.2d at 349. *Du Quoin* simply has no relevance to the issues here regarding the enforceability of a boilerplate waiver provision to a defense of fraud.

Similarly, inapposite to the issues at bar is another case cited by Plaintiff, *FDIC v. Rayman*, 117 F.3d 994 (7th Cir. 1997). As was true in *Du Quoin* the *FDIC* court only was asked to enforce a narrowly focused waiver provision, not a broad provision. Specifically, the case involved a provision where the guarantor waived its right to notice and approval of the sale of the collateral. The guaranty, however, contained language that the guarantor specifically waived the right to "any and all notices of whatever kind or nature…." *Id.* At 997. Such a provision, said the court, nullified the guarantor's claim that he was not liable for the debt because he had not received notice that the collateral was sold for a diminished value, allegedly increasing the risk of the guaranty. *FDIC*, 117 F.3d at 999. The guaranty, said the court, "expressly" waived the guarantors right to such notice. *Id.* At 999. Here, on the other hand, Plaintiff is not seeking to enforce a specific waiver provision, but instead seeks to enforce broad language that would deny Defendants any defense at all. The *FDIC* court's decision regarding specific waiver provisions has no application here.

The same is true of two other cases cited by Plaintiff to incorrectly suggest that a broad waiver of defenses has been recognized by Illinois courts. *Chicago Exhibitors Corp. v. Jeepers! Of Illinois, Inc.*, 376 Ill. App. 3d 599, 876 N.E.2d 129 (1st Dist. 2007) and *Brzozowski v. Northern Trust Co.*, 248 Ill. App. 3d 95, 618 N.E.2d 405 (1st Dist. 1993). Once again, the cited cases provide no support for Plaintiff's argument because they involve only narrowly drawn waiver provisions, as opposed to broad waivers like the one at issue here. The *Chicago*

*Exhibitors* case concerned whether a guarantor was released upon modification of the collateral, despite language in the guaranty that "*specifically* provided that the guaranty would remain intact regardless of changes and modifications to the lease."  376 Ill. App. 3d at 609, 876 N.E.2d at 138 (emphasis supplied).  *Brzozowski* dealt with whether a guarantor could complain about the creditor's decision to release the collateral securing the guaranty, despite a waiver specifically permitting such a release.  248 Ill. App. 3d at 101-02, 618 N.E.2d at 410.  Both courts upheld the specific waiver provision at issue, allowing the lender to engage in the actions which were specified in the waiver.  The holding of those courts, however, involving narrowly-drawn waiver provisions, has no relevance to the issue here of whether a broad boilerplate waiver can allow a party like Plaintiff to evade any culpability for fraud or other malfeasance.

Plaintiff's remaining citations actually support Defendants because they recognize that public policy considerations will void enforcement of a broad waiver provision against the type of defenses at issue here.  *See Chemical Bank v. Paul*, 244 Ill. App. 3d 772, 783, 614 N.E.2d 436, 442-43 (1st Dist. 1993) and *Finova Capital Corp. v. Slyman*, No. 01 C 6244, 2002 WL 318294 (N.D. Ill. Feb. 25, 2002) (Gettleman, J).  In *Chemical Bank*, the court was presented with a broad waiver, akin to the one here, that waived "*all present and future defenses to the payment of the debt*."  *Chemical Bank*, 244 Ill. App. 3d at 775, 614 N.E.2d at 437 (emphasis original).

Despite the broad waiver language, the *Chemical Bank* court determined that the guarantor did not waive the right to assert an affirmative defense under the covenant of good faith and fair dealing.  244 Ill. App. 3d at 783, 614 N.E.2d at 442.  The court cited public policy considerations in thus holding that a broad waiver provision in a guarantee could not exculpate a lender who had engaged in bad faith.  In *Finova* the court also made clear that "public policy

concerns must be taken into account by courts when determining the effect and extent of such waiver." *Id.* at *2. Plaintiff has cited to no case law which supports its claim that the boilerplate waiver provision at issue can be used to void Defendant's affirmative defenses. This is not surprising because the case law, including cases cited by Plaintiff itself, makes it clear that public policy will not allow such a result.

## II.     Defendants Have Sufficiently Plead Each Of Their Affirmative Defenses.

### A.     Fraud in the inducement was appropriately pled.

Defendants sufficiently alleged the affirmative defense of fraud in the inducement. Under Illinois law, a false statement of material fact used to induce the execution of a promissory note or a contract is procurement by fraud. *Wilbur v. Potora*, 123 Ill. App. 3d 166, 171, 462 N.E.2d 734, 738 (1st Dist. 1984). One induced to contract through fraud may, at his election, rescind the contract. *Id.* In Illinois, the elements of fraud in the inducement are: (1) a false statement of material fact; (2) knowledge or belief by the maker that the statement was false; (3) an intent to induce reliance on the statement; (4) reasonable reliance upon the truth of the statement; and (5) damages resulting from that reliance. *Petrakopoulou v. DHR Int'l, Inc.*, 626 F. Supp. 2d 866, 870 (N.D. Ill. 2009) *citing Lagen v. Calcor Co.*, 274 Ill. App. 3d 11, 653 N.E.2d 968, 972 (2d Dist. 1995).

Contrary to Plaintiff's claims, Defendants have properly asserted the necessary elements for fraud in the inducement and have sufficiently plead the requisite detail to support their claim. First, Defendants have alleged false statements of material fact by Plaintiff, alleging that (1) Plaintiff told Defendants that it would make a loan using standard payment term; and (2) Plaintiff told Defendants that so long as they were working diligently on the Warren Park project and making reasonably prompt progress, Plaintiff would make necessary modifications,

extensions or accommodations.  (Affirmative Defenses, ¶¶'s 6, 9)  The Affirmative Defenses provide specifics with regard to these misrepresentations.  The Affirmative Defenses allege that the representations regarding the loan terms were made in a loan commitment issued by Merrill Lynch 40 days before the closing.   The Affirmative Defenses also allege that the misrepresentation concerning accommodations was made by an employee of Plaintiff, William Ballendt, and that the misrepresentation was made in the weeks before closing.[1]

Defendants have also properly alleged that Plaintiff possesses the requisite knowledge that the statements were false by alleging that Plaintiff had worked in the past to modify or extend the loan agreement as needed, and represented it would do the same for this transaction. (Affirmative Defenses, ¶ 6.)  Further, Defendants alleged that Plaintiff had deliberately engaged in a "bait and switch" with regard to the fees (Affirmative Defenses, ¶¶'s 9, 10.)

Additionally, Defendants properly pled an intent to induce reliance by stating that Plaintiff had "baited" Defendants with the promise of the standard loan terms and then "waited until just prior to the Closing" and after the due diligence option period had already lapsed to engage in the "switch" to the predatory and extortive changes  (Affirmative Defenses, ¶ 10.) Moreover, the Affirmative Defenses assert that, throughout the negotiation process, Plaintiff assured Defendants that reasonable accommodations would be made in order to complete the project and that such reassurances clearly were intended to induce Defendants initially to enter into and later to continue the project.  (Affirmative Defenses, ¶¶ 6, 11.)

Defendants have alleged that they "relied on these promises when they proceeded with the Warren Park transaction" in order sufficiently demonstrate the reliance element of fraud. (Affirmative Defenses, ¶ 11.)   Also, Defendants have asserted damages as a result of the

---

[1] To the extent the Court believes that more specifics are required, Defendant requests that they

reliance on Plaintiff's misrepresentations.  Not only were Defendants required to accept the last minute changes or face substantial penalties, but once Defendants entered the contract where they stand to lose approximately $8,000,000 in equity from investors and face suit from Plaintiff.  (Affirmative Defenses, ¶¶ 10, 21.)

In its motion, Plaintiff argues that because Defendants saw the contract language, including the changed terms, the terms of the contract are enforceable and no fraud occurred. But, Defendants have alleged that they only learned of the changed language mere hours before they were required to sign, and well past the time when they could have extricated themselves from the underlying purchase contract during the due diligence period.  (Affirmative Defenses, ¶¶ 9-10.)  In such a circumstance, a party like Plaintiff cannot evade its wrongdoing by relying on language in the parties' contract.  *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332 (7th Cir. 1992).

In *Havoco*, the defrauded party signed the fraudulently induced contracts knowing of the fraud, but after it had been forced into a position in which it could do nothing else.  In that situation, held the court, knowledge of the truth does not negate the detrimental reliance.  *Id*. at 1342.  The *Havaco c*ourt thus held that a party who entered into a contract after learning of fraudulent acts nevertheless could sustain a claim for fraud when there is "no way to avoid the damage by the time the fraud was discovered."  *Id.*

Here, Defendants only learned of the fraud related to the changed terms moments before they were required to sign the contract.  By the time that they learned of the fraudulent "bait and switch," Defendants had signed a purchase contract for the subject property upon which the due diligence option period had already lapsed and had invested a substantial amount of money

---

be allowed to amend the affirmative defense to add such specifics.

preparing to close the deal. (Affirmative Defenses, ¶ 10.) As alleged, had the change in terms not been accepted, there would have a default under the purchase contract and the Defendants would have lost over $800,000 in fees and expenses. (*Id.*) Thus, because Defendants had no way to avoid the damage by the time the fraud was discovered, their claim for fraudulent inducement is a valid one. Moreover, given the additional fraudulent misrepresentations made about modifications to the agreement, Defendants were further induced to enter into the guaranty, and thus, sustaining their claim for fraudulent inducement.

**B.    Defendants' affirmative defense of duress is properly pled.**

Defendants have sufficiently alleged the affirmative defense of duress in order to survive a motion to strike. Economic duress is a condition where one is induced by the wrongful conduct or threat of another to make a contract under circumstances that deprive one the ability to exercise of free will. *Krilich v. Am. Nat'l Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 778 N.E.2d 1153 (2d Dist. 2002). Application of the doctrine renders the contract voidable. *Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680, 682 (7th Cir. 1970) (applying Illinois law).

Plaintiff alleges that it merely enforced a contract right and, therefore, Defendants' economic duress defense is inadequate. Plaintiff misconstrues the affirmative defense pled. While it is generally true that duress does not exist where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances, that is **not** the case when "the conduct of the party obtaining the advantage is shown to be tainted with some degree of fraud or wrongdoing." *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1343 (7th Cir. 1992) (applying Illinois law) (emphasis original). Here, Defendants' basis for alleging economic duress is indeed based upon fraud and, thus, a claim for duress is valid.

Specifically, Plaintiff misrepresented the terms of the loan agreement in order to perform a "bait and switch" that Plaintiff knew would force Defendants to enter into a guaranty for a loan on substantially different terms.  (Affirmative Defense ¶¶ 9-10.)  Defendants' allegations of fraud bring their claim within the bases for a claim of economic duress.  971 F.2d at 1343.

Plaintiff also incorrectly asserts that Defendants had free will to accept or decline the contract.  However, Defendants lacked such free will.  As the Court found in *Havaco*, lack of free will exists when, based on the other parties' fraud, a party is left with no economic choice but to enter into the contract.  *Havoco* 971 F.2d  at 1343.  Here, as set forth above, by the time the terms were changed, Defendants had signed a purchase contract for the subject property upon which the due diligence option period had already lapsed and had invested a substantial amount of money preparing to close the deal.  (Affirmative Defense ¶ 10.)  Had the change in terms not been accepted, there would have a default under the purchase contract and the Defendants would have lost over $800,000 in fees and expenses.  (*Id.*)

Moreover, given that the changes in the terms were made only hours before the guaranty was to be signed, Defendants did not even have ample time for the inquiry, examination, and reflection to make it less likely that they would be "overborne by economic duress so as to render a contract violable."  *Cf.*, *Alexander v. Standard Oil Co.*, 97 Ill. App. 3d 809, 423 N.E.2d 578 (5th Dist. 1981).   Thus, due to Plaintiff's fraudulent last minute "bait and switch" Defendants had no choice but to accept the guaranty.[2]

### C.    Defendants' have sufficiently alleged equitable estoppel.

The purpose of equitable estoppel is to prevent fraud and injustice so that a party may not

---

[2] To the extent Plaintiff argues ratification of the contract, such an argument fails because Plaintiff's coercing influence, including threats not to cooperate to ensure completion of the project, had not ceased.  *See, e.g., Harris v. Flack*, 289 Ill. 222, 124 N.E. 377 (1919).

take advantage its own wrongdoing.  *Tegeler v. Indus. Comm'n*, 173 Ill. 2d 498, 672 N.E.2d 1126 (1996).  The elements necessary to prove equitable estoppel are quite similar to fraud and include:  "(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other person intended or reasonably expected that the party claiming estoppel would act upon the representation; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof."  *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 313-314, 751 N.E.2d 1150, 1157 (1997).

In the instant case, Defendants have alleged each of these elements.  As previously discussed, Defendants alleged that Plaintiff knowingly misrepresented that the loan conditions were different than those that it actually forced upon Defendant in a "bait and switch."  Further, Defendants asserted that they "reasonably relied upon Plaintiff's misrepresentations." (Affirmative Defenses, ¶ 11.)  Defendants clearly alleged prejudice by their reliance on Plaintiff's misrepresentations, because they alleged that they relied on those representations in allowing the underlying transaction to proceed, thus exposing Defendants to terms that led to foreclosure.  Therefore, Defendants have sufficiently alleged the affirmative defense of equitable estoppel.

### D.    The doctrine of unclean hands prohibits Plaintiff's action.

Plaintiff's action fails due to application of the unclean hands doctrine.  Unclean hands

prohibits a party from taking advantage of its own wrong.[3]   *Thompson Learning, Inc. v.*
*Olympia Props., LLC*, 365 Ill. App. 3d 621, 634, 850 N.E.2d 314, 325 (2d Dist. 2006).  For the
doctrine of unclean hands to apply, the party's misconduct must consist of fraud or bad faith.
*Id.*  Here, as set forth in detail above, Defendants have clearly alleged that Plaintiff committed
fraudulent misrepresentations in the inducement of the contract.   (*See* First Affirmative
Defenses).   Moreover, the affirmative defenses demonstrate that Plaintiff acted in bad faith
throughout the contractual relationship by attempting to de-rail the project in hopes of acquiring
the underlying property.  (*See generally* Affirmative Defenses.)  Although Plaintiff once again
suggests it was merely exercising a contractual right, Defendants have asserted conduct
consisting of fraud or bad faith.   Therefore, because Plaintiff should not be permitted to take
advantage of its own wrong, the doctrine of unclean hand prohibits its action.

### III.   The Illinois Credit Agreement Act Does Not Apply To Bar Defendants' Affirmative Defenses.

Finally, the Illinois Credit Agreement Act ("Act") does not bar Defendants' affirmative
defenses.  Plaintiff argues that the affirmative defenses are, in essence, Defendants' attempts to
introduce oral modifications to the contract and cites several cases that hold that such
modifications are barred by the Act if not in writing.  But, the affirmative defenses do not seek
such a modification.   Rather, the defenses of fraudulent inducement and economic duress
operate to invalidate the underlying contract and the defense of unclean hands simply prohibits

---

[3] To the extent that Plaintiff argues that the doctrine only applies to equitable defenses, "some
courts in Illinois have found that an unclean hands defense may be brought in law as well as
equity."  *Continental Bank v. Modansky*, 129 B.R. 159, 164 (N.D. Ill. 1991) *citing Urecal v.
Masters*, 413 F. Supp. 873, 876 (N.D. Ill. 1976) *and FEL Publ'ns v. Catholic Bishop of Chicago*,
506 F. Supp. 1127, 1137 (N.D. Ill.1981).   Nevertheless, because Defendants' affirmative
defenses would have the effect of rescinding the contract, equitable principles apply.  *23-25
Bldg. P'Ship v. Testa Produce, Inc.*, 381 Ill. App. 3d 751, 756, 886 N.E.2d 1156, 1163 (1st Dist.
2008) ("Rescission is an equitable remedy.").

a party from taking advantage of its wrongs.  *See e.g., Laemmar v. J. Walter Thompson Co.*, 435 F.2d 680, 682 (7th Cir. 1970) (applying Illinois law); *Thompson Learning, Inc. v. Olympia Props., LLC*, 365 Ill. App. 3d 621, 634, 850 N.E.2d 314, 325 (2d Dist. 2006).

The cases cited by Plaintiff, while barring modification, do not explore the ramifications of a nullification of a contract in the context of the Act's prohibitions on oral agreements or modifications.  Because Defendants do not seek to amend the language of the contract, but rather have grounds to invalidate the written contract or otherwise prohibit Plaintiff from seeking damage under the guaranty, the Act should not apply to the instant matter.[4]

WHEREFORE, for all of the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion to Strike Affirmative Defenses and for such other and further relief as this Court deems just.

Dated:  November 12, 2009                    Respectfully submitted,

                                             **DONALD L. SILVERMAN, ERIC W. BRAUSS
                                             and TODAY REALTY ADVISORS, INC.**

                                             By: /s/  Steven Blonder
                                                   One of Its Attorneys


Steven P. Blonder
Joanne A. Sarasin
Shawn M. Staples
Much Shelist Denenberg
    Ament & Rubenstein P.C.
191 North Wacker Dr., Suite 1800
Chicago, Illinois 60606

---

[4] Note that Defendants' argument for duress is distinct from the affirmative defense presented in *Westinghouse Elec. Corp. v. McLean*, 938 F. Supp. 487 (N.D. Ill. 1996).  There, the basis for alleging economic duress was fraud based upon statements that the guarantees would not be enforced and allegations that funds were not dispersed, without an obligation to do so.  938 F. Supp. At 493.  Here, on the other hand, economic duress is not based on this type of fraud but rather on a last minute "bait and switch" in the in terms of the written contract which, under the circumstances, Defendants were given no choice but to sign.  (Affirmative Defense, ¶¶9-10.)

## CERTIFICATE OF SERVICE

I, Steven P. Blonder, an attorney, certify that on November 12, 2009, I electronically

filed **Defendants' Response to Plaintiff's Motion to Strike Affirmative Defenses**, with the

Clerk of Court using the CM/ECF system, which will send notification of such filings to the

following:


Timothy J. Patenode
Dawn M. Canty
Heather Kuhn O'Toole
Katten Muchin Rosenman LLP
525 West Monroe
Chicago, Illinois 60661
(312) 902-5200


/s/Steven P. Blonder