**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GENERAL ELECTRIC BUSINESS | ) | |
| FINANCIAL SERVICES, INC., f/k/a | ) | |
| MERRILL LYNCH BUSINESS | ) | |
| FINANCIAL SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09 C 364 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman Magistrate |
| DONALD L. SILVERMAN, ERIC W. | ) | |
| BRAUSS, and TODAY REALTY | ) | Judge Nan R. Nolan |
| ADVISORS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT OF ADDITIONAL FACTS**</u>

Plaintiff General Electric Business Financial Services ("GEBFS"), for its response to Defendants' Additional Facts, states as follows:

**GENERAL OBJECTIONS**

Local Rule 56.1(b) states that a party opposing summary judgment may file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon."  Rather than setting forth the Additional Facts in short, concise paragraphs, as discussed in the specific responses below, Defendants have repeatedly combined numerous allegations into a single paragraph and have injected conclusory, argumentative and immaterial assertions into such Additional Facts.  As the Seventh Circuit has consistently found, "a district court is entitled to expect strict compliance with Rule 56.1." *Dooley v. Abbott Labs.*, No. 07 C 7249, 2009 WL 1033600, at *1 n.1 (N.D. Ill. Apr. 17, 2009). It is further within the Court's discretion to impose a penalty for Defendants' failure to comply

with the Local Rules, and to not consider those Additional Facts which fail to comply with Local

Rule 56.1.   *Id.* (refusing to consider statements of fact consisting of "numerous lengthy

paragraphs relating to a variety of unrelated or irrelevant topics that one cannot characterize as

'short'").  Such a sanction is warranted in this case.

GEBFS also objects to the Additional Facts in their entirety as such facts are immaterial

to the issues raised in GEBFS's Motion for Summary Judgment and have been interposed solely

to attempt to manufacture fact issues where none exist.  GEBFS has simultaneously moved to

strike these same facts, asserted as "Common Facts" in support of Defendants' Affirmative

Defenses.  As such, GEBFS reserves the right to deny and provide evidence supporting the

denial of such facts to the extent the Court denies its request for summary judgment.[1]

### SPECIFIC RESPONSES TO ADDITIONAL FACTS

#### STATEMENT NO. 21

Donald Silverman ("Silverman") is a principal of Margaux Development
Company ("MDC"), a Dallas-based real estate development company that
typically develops commercial, multi-family residential and mixed used real
estate projects. (Silverman Aff. ¶ 1.)

#### ANSWER NO. 21

GEBFS objects to the allegations of additional facts contained in this paragraph because

they are immaterial to this motion.

---

[1]   As discussed in the Motion for Summary Judgment and the reply in support thereof, the facts
supporting GEBFS's right to recover under the Limited Joinder and Guaranty are not in dispute,
and GEBFS thus has sought resolution of this matter prior to incurring the expense of discovery.
In the event that its motion is denied, GEBFS reserves the right to undertake discovery and
dispute the "Additional Facts" raised by Defendants.

**STATEMENT NO. 22**

MDC and Today Realty Advisors, Inc. ("TRA"), which is an affiliated company of Eric Brauss, teamed up to do a mixed use real estate development in Frisco, Collin County, Texas, which is located at the corner of Warren Parkway and the Dallas North Tollway (the "Property"). (Silverman Aff. ¶ 2.)

**ANSWER NO. 22**

GEBFS objects to the allegations of additional facts contained in this paragraph because

they are immaterial to this motion.

**STATEMENT NO. 23**

The Property was owned by HCA, who planned to build a hospital facility on the Property. (Silverman Aff. ¶ 3.) In March, 2007, Defendants learned that HCA no longer planned to build its hospital on the Property, and Silverman, through an entity Silverman controlled -- Jade Acquisitions, Inc., (hereinafter, "Buyer") a Texas corporation -- made an offer to buy 91.645 acres. (*Id*.) A purchase contract for the 91 acres was executed. (*Id*.) The sale price for the Property was $30,375,000, and $250,000 was escrowed by the Buyer. (*Id*.)

**ANSWER NO. 23**

GEBFS objects to the allegations of additional facts contained in this paragraph because

Defendants have failed to comply with Local Rule 56.1 and because the facts are immaterial to

this motion.

**STATEMENT NO. 24**

For the next two months, MDC and TRA began working to secure financing and investors for the Property and development thereof and otherwise prepare for the closing on the Property. (Silverman Aff. ¶ 4.) Margaux Warren Park Partners, Ltd. ("Warren Park") was established to own the Property, and Warren 91, LLC was established to serve as the general partner of Warren Park. Today Tollway Land, L.P., an affiliate of Brauss, and Margaux Partners 2007, Ltd., an affiliate of Silverman's, are the limited partners of Warren Park. (*Id*.)

**ANSWER NO. 24**

GEBFS objects to the allegations of additional facts contained in this paragraph because

Defendants have failed to comply with Local Rule 56.1 and because the facts are immaterial to

this motion.

**STATEMENT NO. 25**

MDC and TRA had both used Metropolitan Capital Advisors, Ltd. ("MetCap"), a real estate investment banking firm, in the past, and they used MetCap to assist them with securing a lender for this transaction. (Silverman Aff. ¶ 5.) MDC, TRA, and MetCap began talking with Merrill Lynch about financing this transaction. (*Id.*) MDC, TRA and MetCap have all done business with the individuals at Merrill Lynch, including William Ballant and John Petroysky, who worked on this loan. (*Id.*) Based on their prior experience with these individuals at Merrill Lynch and the representations they and others at Merrill Lynch made, Defendants decided to move forward with Merrill Lynch as the lender on this deal. (*Id.*)

**ANSWER NO. 25**

GEBFS objects to the allegations of additional facts contained in this paragraph because

Defendants have failed to comply with Local Rule 56.1 and because the facts are immaterial to

this motion.

**STATEMENT NO. 26**

In the weeks prior to the closing of the loan, Merrill Lynch, through its employee William Ballent, told the representatives at TRA that so long as they were working diligently on the Warren Park project and making reasonably prompt progress on the project, Merrill Lynch would make necessary modifications, extensions and accommodations as needed in order for completion of the project. (Silverman Aff. ¶ 6.) Based on prior conduct amongst the parties, including extensive negotiations on a number of projects brokered by MetCap to other clients where Merrill Lynch and/or the individuals representing Merrill Lynch were the lenders, Defendants accepted these representations as true. (*Id.*) Specifically, it was represented to Silverman that in prior instances when the borrower needed additional time to complete an aspect of the project or ran into a delay over which it did not have control, Merrill Lynch had, in the past, always

done exactly what it said it would do in this case — worked with the borrower to modify and/or extend its loan agreements in order to give the borrower additional time and/or funding needed to complete the project. (*Id.*)

## ANSWER NO. 26

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1 and because the facts contradict the terms of the written credit agreements, and as such, are immaterial to the motion because: (i) the terms of the Loan Agreement, as a matter of law, supersede any prior negotiations or understandings; and (ii) reliance on oral modifications that contradict the terms of written credit agreements is barred as a matter of law pursuant to the terms of the Illinois Credit Agreement Act.

## STATEMENT NO. 27

On May 22, 2007, Jade Acquisitions, Inc. assigned the purchase contract for the Property to Warren Park. (Silverman Aff. ¶ 7.) On May 25, 2007, the closing on the purchase contract for the Property occurred (the "Closing"). (*Id.*) The loan with Merrill Lynch was structured as a typical land development loan that provided for initial funding of a portion of the loan used to purchase the land and pay various fees, for monthly draws and for interest reserves. (*Id.*) In association with the Closing, Warren Park entered into the following written agreements with Merrill Lynch Capital, a division of Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch"): (1) a Loan Agreement for a loan in the amount of $34,800,000 (the "Loan"); (2) Deed of Trust, Security Agreement, Assignment of leases and Rents, and Fixtures Filing agreement for the benefit of Merrill Lynch to secure the Loan (the "Deed of Trust"); (3) two Promissory Notes in favor of Merrill Lynch, one in the amount of $26,700,000 and one in the amount of $8,100,000 (the "Promissory Notes"); and, (4) various UCC financing statements. (*Id.*)

## ANSWER NO. 27

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1.  GEBFS admits that it entered into the Loan, Deed of Trust, Promissory Notes and certain UCC financing statements with the

Borrower.  GEBFS objects to the remaining allegations of additional facts contained in this paragraph because they are immaterial to the motion.

## STATEMENT NO. 28

Brauss, TRA, and Silverman also executed guarantees in favor of Merrill Lynch for the amount of the debt. (Silverman Aff. ¶ 8.) Merrill Lynch required Brauss, TRA, and Silverman to sign the guarantees and/or joinders in order to issue the Loan or otherwise commence the project. (*Id*.)

## ANSWER NO. 28

Admitted.

## STATEMENT NO. 29

Merrill Lynch had issued a loan commitment and application with the terms of the Loan approximately 40 days prior to Closing, which did not include provisions that required a loan paydown on the first anniversary date. (Silverman Aff. ¶ 9.) Mere hours prior to Closing, John Petrovsky and William Ballent, on behalf of Merrill Lynch, told Warren Park that in order to receive the loan committee's approval, there would need to substantial changes to the terms of the Loan package, requiring Warren Park, by the first anniversary date of the Loan, to either: (a) make a $2,500,000 payment on the Loan; or, (b) have sold at least 10 acres of the land at $10.80 per square foot and have certain entitlements from the City of Frisco. (*Id*.) These terms were not originally included in the loan commitment nor required by the documentation prior to the final documents. (*Id*.) Moreover, Merrill Lynch knew that the due diligence period had expired and signing parties' $250,000 deposit was no longer refundable. (*Id*.) Merrill Lynch claimed that the reason for the last minute change was because the standard fees associated with the loan package were too high. (*Id*.) The loan package for this transaction included a number of standard fees, including equity placement fees for TRA, acquisition fees for Brauss and Silverman, a broker's fee for MetCap and approximately $400,000 in lender fees for Merrill Lynch. (*Id*.) However, at all material times, Merrill Lynch knew the amount of the above-described fees and that they would be paid from the loan proceeds based upon discussions with Merrill Lynch representative stating that the fees were in the budget and approved by Merrill Lynch.. (*Id*.) Therefore, Merrill Lynch had no justifiable reason to change the terms at the last minute. (*Id*.)

**ANSWER NO. 29**

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1 and because the facts contradict the terms of the written credit agreements, and as such, are immaterial to the motion because: (i) the terms of the Loan Agreement, as a matter of law, supersede any prior negotiations or understandings; and (ii) reliance on oral modifications that contradict the terms of written credit agreements is barred as a matter of law pursuant to the terms of the Illinois Credit Agreement Act.

**STATEMENT NO. 30**

Because Merrill Lynch waited until just prior to the Closing to change the conditions of the Loan, the signing parties, who had signed a purchase contract for the Property on which the due diligence option period had already lapsed and who had invested a substantial amount of money preparing to close on the deal, had no choice but to accept Merrill Lynch's predatory, extortive changes to the Loan. (Silverman Aff. ¶ 10.) In fact, had these onerous deal terms not been accepted, there would have been a default under the purchase contract, and the parties would have been deprived of purchasing the Property, and lost over $800,000 in fees and expenses incurred in anticipation of closing. (*Id.*) Merrill Lynch, acting through its agents, William Ballent and John Petrovsky, essentially did a "bait and switch" in connection with the terms of this Loan. (*Id.*)

**ANSWER NO. 30**

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1 and because the facts contradict the terms of the written credit agreements, and as such, are immaterial to the motion because: (i) the terms of the Loan Agreement, as a matter of law, supersede any prior negotiations or understandings; and (ii) reliance on oral modifications that contradict the terms of written credit agreements is barred as a matter of law pursuant to the terms of the Illinois Credit Agreement Act. GEBFS further objects to the allegations to the extent they call for a legal conclusion.

**STATEMENT NO. 31**

Until this time, the relationship of Defendants and Merrill Lynch was one of trust. (Silverman Aff. ¶ 11.) While Defendants not happy about Merrill Lynch's "bait and switch" move, there was no other choice but to accept the terms as presented. (*Id.*) Further, although not happy about the terms, Defendants were less concerned at the time about how it would impact the Warren Park project because Merrill Lynch, through Ballent, represented that, if need be in the future, Merrill Lynch would modify and/or extend the Loan to meet any reasonable business needs as they had always done in the past, and Defendants believed them and relied on these promises when they proceeded with the Warren Park transaction. (*Id.*) In fact, after the Loan closed, Ballent and others at Merrill Lynch reiterated these and similar representations to MetCap and Silverman. (*Id.*)

**ANSWER NO. 31**

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1 and because the facts contradict the terms of  the written credit agreements, and as such, are immaterial to the motion because: (i) the terms of the Loan Agreement, as a matter of law, supersede any prior negotiations or understandings; and (ii) reliance on oral modifications that contradict the terms of written credit agreements is barred as a matter of law pursuant to the terms of the Illinois Credit Agreement Act.  GEBFS further objects to the allegations to the extent they call for a legal conclusion.

**STATEMENT NO. 32**

Relying on such representations, after Closing, Defendants immediately began working on putting together a package for the City of Frisco in order to secure the entitlements newly required by the Loan. (Silverman Aff. ¶ 12.) In fact, a comprehensive package was prepared and submitted to the City within 90 days of Closing. (*Id.*)

**ANSWER NO. 32**

GEBFS objects to the allegations of additional facts contained in this paragraph because they are immaterial to this motion.

**STATEMENT NO. 33**

While Defendants were working on the development of this Project, Merrill Lynch was sold to GE. (Silverman Aff. ¶ 13.) The Warren Park Loan was therefore sold as part of a business transaction, and GE became the new "Lender." (*Id.*) In addition, the individual bankers that MetCap and I had worked with at Merrill Lynch either left or were terminated. (*Id.*)

**ANSWER NO. 33**

GEBFS objects to the allegations of additional facts contained in this paragraph because

Defendants have failed to comply with Local Rule 56.1.  GEBFS admits that it was formerly

known under the name of Merrill Lynch Business Financial Services, Inc. and that John

Petrovsky and William Ballent are no longer employed by GEBFS.

**STATEMENT NO. 34**

By May of 2008, when Warren Park was due to either: (a) make a $2,500,000 payment on the Loan; or, (b) have sold at least 10 acres of the land at $10.80 per square foot and have certain entitlements from the City of Frisco, Warren Park still did not have all of the required approvals from the City. (Silverman Aff. ¶ 14.) Warren Park did have a commitment letter from one buyer to purchase 20 acres for at least $10.80 per square foot – an amount of approximately $10,000,000, which would bring approximately four times the required buy-down amount needed under the terms of the Loan. (*Id.*) Warren Park had in place Planned Development zoning for the Property; however, it did not have formal site plan and other approvals from the City required to meet the oppressive Loan requirements. (*Id.*) Though Warren Park had submitted all of the required paperwork to the City of Frisco by August of 2007 and done everything in its power to secure the City of Frisco entitlements and though the City of Frisco repeatedly said it liked the proposed development, the City, through no fault of Warren Park's, had just not issued its final approvals by May of 2008. (*Id.*)

**ANSWER NO. 34**

GEBFS objects to the allegations of additional facts contained in this paragraph because

Defendants have failed to comply with Local Rule 56.1.  GEBFS admits that Warren Park failed

to either: (a) make a $2,500,000 payment on the Loan; or (b) have sold at least 10 acres of the

land at $10.80 per square foot and have certain entitlements from the City of Frisco.  GEBFS

objects to the remaining allegations of additional facts contained in this paragraph because they are immaterial to this motion.

## STATEMENT NO. 35

Warren Park therefore went to GE (with a buyer in hand), explained the situation with the City and asked for an extension. (Silverman Aff. ¶ 15.) GE refused to even discuss the matter with Warren Park unless and until they signed a negotiating agreement. (*Id.*) Warren Park signed the agreement on June 12, 2008 and returned it to GE. (*Id.*) Warren Park also made a written proposal to GE on June 19, 2008. (*Id.*)

## ANSWER NO. 35

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1.  GEBFS admits that Warren Park signed an agreement with GEBFS on or about June 12, 2008, allowing Warren Park additional time to comply with certain of its obligations under the Loan Agreement.   GEBFS objects to the remaining allegations of additional facts contained in this paragraph because they are immaterial to this motion.

## STATEMENT NO. 36

When GE, through the GE Bankers, finally agreed to discuss Warren Park's requested extension, GE would only agree to give Warren Park a forbearance on the Loan – GE would not agree to an extension or a modification (i.e., accept the pending sale of 20 acres with the entitlements that Defendants did have) as Merrill Lynch and the individuals at Merrill Lynch had promised they would do if that very situation presented itself – waiting on the City of Frisco to issue documents. (Silverman Aff. ¶ 16.) In exchange for the forbearance, GE agreed not to foreclose on its security interest until July 25, 2008. (*Id.*) GE charged Warren Park $250,000 for this forbearance. (*Id.*) At the time, Warren Park paid the $250,000 because GE, through the GE Bankers, promised that GE would modify the Loan before the July 25, 2008 deadline. (*Id.*) In addition, Warren Park paid the $250,000 fee because GE represented that the loan

committee would approve its proposal and because they were told that $200,000 of the $250,000 "fee" would be applied to the Loan balance. (*Id.*)

## ANSWER NO. 36

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1.  GEBFS admits that it agreed to forbear from foreclosing on the Property until after July 25, 2008, in exchange for certain consideration. GEBFS objects to the remaining allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1 and because the facts contradict the terms of  the written credit agreements, and as such, are immaterial to the motion because: (i) the terms of the Loan Agreement, as a matter of law, supersede any prior negotiations or understandings; and (ii) reliance on oral modifications that contradict the terms of written credit agreements is barred as a matter of law pursuant to the terms of the Illinois Credit Agreement Act.


## STATEMENT NO. 37

By mid-July, 2008, despite Warren Park's best efforts, it still did not have the City's approvals required by the Loan. (Silverman Aff. ¶ 17.) Warren Park did, however, have a second offer to buy 10 acres at the $10.80 per square foot price, which is a value of approximately $5,000,000. (*Id.*) Warren Park therefore went back to GE the week of July 14, 2008 with a request to extend the time period by when it would have to have the City's approval and to offer to pay the sales proceeds from the 10 acre land sale to GE in order to pay down the Loan. (*Id.*) When Warren Park approached Matthew Ehret of GE in July of 2008, GE initially said that Warren Park's proposal sounded good but that it would just need the loan committee's stamp of approval. (*Id.*)

## ANSWER NO. 37

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1 and because they contradict the terms of the written credit agreements, and  as such, are immaterial to the motion because: (i)  the terms

of the Loan Agreement, as a matter of law, supersede any prior negotiations or understandings; and (ii) reliance on oral modifications that contradict the terms of written credit agreements is barred as a matter of law pursuant to the terms of the Illinois Credit Agreement Act.

## STATEMENT NO. 38

By July 18, 2008, without explanation, GE notified Warren Park that it would not extend or alter the Loan and that if Warren Park did not (a) pay an additional $2,500,000 by July 25, 2008; (b) agree to move up the maturity date from May 2009 to January 2009; and, (c) agree that no further draws on the Loan would be allowed, GE would begin foreclosure proceedings immediately. (Silverman Aff. ¶ 18.) Warren Park again tried to meet with GE, who, through Matthew Ehret and Julia Silverstein, refused to even meet with Warren Park. (*Id.*)

## ANSWER NO. 38

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1 and because the facts contradict the terms of  the written credit agreements, and as such, are immaterial to the motion because: (i) the terms of the Loan Agreement, as a matter of law, supersede any prior negotiations or understandings; and (ii) reliance on oral modifications that contradict the terms of written credit agreements is barred as a matter of law pursuant to the terms of the Illinois Credit Agreement Act.

## STATEMENT NO. 39

GE would later admit, through Matthew Ehret, Julia Silverstein and others, that GE no longer wanted to be in the real estate lending business and planned to do everything it could to get rid of loans like the one at issue in this case as quickly as possible and get as much money as possible in the process. (Silverman Aff. ¶ 19.)

**ANSWER NO. 39**

GEBFS objects to the allegations of additional facts contained in this paragraph because they are immaterial to this motion.

**STATEMENT NO. 40**

Warren Park could not agree to the terms proposed by GE and the GE Bankers. (Silverman Aff. ¶ 20.) In addition to the $34,800,000 in loan proceeds, Warren Park raised approximately $8,000,000 in equity from investors. (*Id.*) Warren Park has a substantial amount of money invested in this project. (*Id.*) Warren Park, therefore, not only stands to lose the equity it has accumulated in the Property, but also the funds invested thus far in the project and its investor's funds. (*Id.*)

**ANSWER NO. 40**

GEBFS objects to the allegations of additional facts contained in this paragraph because Defendants have failed to comply with Local Rule 56.1 and because the facts are immaterial to this motion.

Dated: November 30, 2009                    Respectfully submitted,

                                            **GENERAL ELECTRIC BUSINESS FINANCIAL SERVICES, INC.**

                                            By: /s/ Dawn M. Canty
                                                 One of Its Attorneys

Timothy J. Patenode
Dawn M. Canty
Heather Kuhn O'Toole
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe
Chicago, IL 60661
(312) 902-5200

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that she caused a true and correct copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 56.1 STATEMENT OF ADDITIONAL FACTS to be filed using the CM/ECF system on November 30, 2009, which will send notification of such filing to the registered CM/ECF users listed below:

> Steven P. Blonder, Esq.
> Shawn M. Staples, Esq.
> Much Shelist Denenberg
> Ament & Rubenstein P.C.
> 191 North Wacker Drive, Suite 1800
> Chicago, Illinois 60606

>     /s/ Dawn M. Canty

50566951