IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL ELECTRIC BUSINESS FINANCIAL | ) | |
| SERVICES, INC., f/k/a Merrill Lynch Business | ) | |
| Financial Services, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | No.  09 C 0364 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| DONALD L. SILVERMAN, ERIC W. BRAUSS, | ) | |
| and TODAY REALTY ADVISORS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, General Electric Business Financial Services, Inc. ("GEBFS"), formerly known

as Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch"), has sued defendants

Donald L. Silverman, Eric W. Brauss, and Today Realty Advisors, Inc. ("TRA"), seeking to

enforce each defendant's personal guaranty of a defaulted promissory note.  Count I of the

amended complaint is a claim for breach of limited joinder against defendants Silverman and

Brauss.  Count II is a claim for breach of guaranty against all defendants.  Plaintiff has filed a

motion for summary judgment and a motion to strike defendants' affirmative defenses.  For the

reasons explained below, plaintiff's motion for summary judgment is granted, and the motion to

strike the affirmative defenses is deemed moot.

## FACTS[1]

In May 2007, Margaux Warren Park Partners, Ltd. ("Warren Park"), entered into a loan

agreement with plaintiff under which plaintiff made a $34,800,000 first mortgage loan (the

---

[1] Unless noted otherwise, the following facts, taken from plaintiff's L.R. 56.1 statement
and exhibits attached thereto, are not in dispute.

"Loan") to Warren Park for the acquisition of 91.65 acres of land in Frisco, Texas (the

"Property").  On May 25, 2007, Warren Park executed a Tranche A promissory note in the

amount of $26,700,000 and a Tranche B promissory note in the amount of $8,100,000 (jointly

the "Note").  Contemporaneous with the execution of the Note, each defendant executed a

"Guaranty" under which each "absolutely, unconditionally and irrevocably guaranteed" the full

payment of the principal and interest of the Note when due and the full and prompt payment of

all sums that may be come due under the Note, Loan Agreement, and other loan documents,

subject to a maximum liability of $17,400,000 plus 100% of accrued  interest and fees.  In

addition, defendants Silverman and Brauss executed a "Limited Joinder" which guaranteed full

and complete repayment of the Loan under certain conditions, including the filing for bankruptcy

by Warren Park.  Under Section 7 of the Guaranty, defendants also agreed to full and prompt

payment of any attorney's fees, costs, and expenses incurred in connection with the enforcement

of the Guaranty and other Loan documents.

Warren Park defaulted under the Loan Agreement for two separate reasons: (1) it failed

to make a required payment of $2,500,000.00 to plaintiff; and (2) it failed to sell no less than ten

acres of the Property.  Plaintiff provided notice of the default to defendants and Warren Park on

June 5, 2008.  As a result of the default, plaintiff accelerated all sums due under the Loan

documents and the Note.  Notice of the acceleration and demand for payment was sent to Warren

Park and defendants on September 3, 2008.  To date, no payment on this demand has been made.

On December 16, 2008, Warren Park filed for Chapter 11 protection in the United States

Bankruptcy Court for the Eastern District of Texas ("the Bankruptcy Court").  Plaintiff filed the

instant action on January 20, 2009, seeking to collect on the personal guaranties.  After the

instant action was filed Warren Park and defendants Silverman and Brauss filed an adversary

action in the Bankruptcy Court against plaintiff alleging twelve claims, including fraud,

extortion, theft, and economic duress.  On December 15, 2009, the Bankruptcy Court issued a

memorandum opinion and order granting GEBFS's motion to dismiss Warren Park's first

amended complaint.

## DISCUSSION

**I.  Legal Standard and Applicable Law**

Plaintiff has filed its motion for summary judgment under Fed. R. Civ. P. 56.  Summary

judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986);

Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006).  The burden is on

the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits

that demonstrate an absence of material fact.  See Celotex, 477 U.S. at 323 (1986).  The burden

then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine

issue for trial."  Fed. R. Civ. P. 56(c).  When reviewing a summary judgment motion, the court

must read the facts in the light most favorable to the non-moving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The court's role "is

not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to

determine whether there is a genuine issue of triable fact."  Doe v. R.R. Donnelley & Sons Co.,

42 F.3d 439, 443 (7th Cir. 1994).

## II.  Plaintiff's Claims

Plaintiff has moved for summary judgment on both Counts I and II, arguing that there is no issue of material fact to preclude a finding that defendants have breached their obligations under both the Limited Joinder and Guaranty of the Loan Agreement.  In response, defendants acknowledge that Warren Park defaulted on the Loan Agreement, but assert affirmative defenses denying liability.

Count I, for breach of limited joinder, is a breach of contract claim.  Under Illinois law, to state a claim for breach of contract plaintiff must allege: 1) the existence of a valid contract with defendants; 2) defendants' breach of that contract; 3) plaintiff's performance under the contract; and 4) damages to plaintiff resulting from such breach.  Van Der Molen v. Wash. Mut. Fin., Inc., 359 Ill. App. 3d 813, 823 (Ill. App. Ct. 1st Dist. 2005).[2]

Count II, for breach of guaranty, is equally straightforward.  To establish a prima facie case for enforcement of a guaranty under Illinois law, plaintiff must "'enter[] proof of the original indebtedness, the debtor's default, and the guarantee.'"  S.P. Richards Co. v. Business Supply Corp., 2008 WL 4181729, at *3 (N.D. Ill. Sept. 5, 2008)(quoting Mid-City Indus. Supply Co. v. Horwitz, 476 N.E.2d 1271, 1277, 132 Ill. App. 3d 476, 87 Ill. Dec. 279 (Ill. App. Ct. 1st Dist. 1985)).

---

[2]  The parties are in agreement that Illinois law is the applicable law in the instant case. Moreover, the Loan Agreement, Limited Joinder, and Guaranty each provide that the substantive law of Illinois governs the parties' agreements.

Plaintiff has offered evidence demonstrating all of the elements for both claims, which defendants do not contest.[3]  Instead, defendants assert four affirmative defenses that they claim preclude enforcement of the Guaranty:  (1) fraud in the inducement; (2) duress; (3) equitable estoppel; and (4) unclean hands.  Plaintiff counters that defendants have not and cannot set forth specific facts supporting their affirmative defenses showing that there are genuine issues of material fact requiring trial.  Specifically, plaintiff argues that defendants have waived their right to assert each affirmative defense, that the Illinois Credit Agreement Act ("ICAA") defeats defendants' affirmative defenses, and that each affirmative defense fails as a matter of law.  In addition, plaintiff argues that defendants are collaterally estopped from pursuing their affirmative defenses because the Bankruptcy Court recently resolved the issues raised in the defenses by dismissing claims filed by Warren Park and defendants Silverman and Brauss in their adversary action.  As discussed below, the court agrees that defendants' affirmative defenses do not defeat plaintiff's right to enforce the guarantees against them.

## III.  Plaintiff's Waiver Argument

Plaintiff argues that defendants waived the right to assert each of their affirmative defenses because both the Limited Joinder and Guaranty are "absolute, continuing and unconditional" in their terms and include explicit waivers of all rights and defenses.

---

[3]  Defendants do not dispute that defendants Silverman and Brauss had a valid and enforceable contract with plaintiff, that they breached this contract, that plaintiff performed under the contract, or that plaintiff suffered damages as a result of their breach.  Nor do defendants dispute that Warren Park is indebted to plaintiff as evidenced by the Loan Agreement, that Warren Park defaulted on the debt, and that defendants entered into the Guaranty.

The Limited Joinder specifically states:

> To the fullest extent permitted by applicable law, each Principal[4] waives all rights and defenses of sureties, guarantors, . . . and agrees that its obligations under this Joinder shall be direct, primary, absolute and unconditional and that its obligations under this Joinder shall be unaffected by any of such rights or defenses, including . . .
>
> (g) Any acts or omissions of Lender which vary, increase or decrease the risk on any Principal.

Similarly, the Guaranty provides that "Guarantor absolutely, unconditionally and irrevocably guarantees" full and prompt payment and performance of the Borrower's obligations and any Enforcement costs, that the Guarantor will pay the Indebtedness in the event of any default "regardless of any defense, right of set-off or claims which the Borrower or Guarantor may have against Lender," and that the Guaranty is "an absolute, present and continuing guaranty of payment."

Defendants counter that the broad, boilerplate waiver language in the Limited Joinder and Guaranty should not be enforced because their affirmative defenses are based on fraud and other violations of trust and intentional wrongdoing, and enforcement of the waiver would violate public policy.

Under Illinois law, a guaranty is regarded as "a legally enforceable contract that must be construed in accordance according to its terms, so long as they are clear and unambiguous." F.D.I.C. v. Rayman, 117 F.3d 994, 998 (7th Cir. Ill. 1997).  This remains the case even where a guaranty contains broad statements of guarantor liability, including waivers of all defenses.

---

[4]  The "Principals" here are defendants Silverman and Brauss.

6

Chemical Bank v. Paul, 244 Ill. App. 3d 772, 781 (Ill. App. Ct. 1st Dist. 1993).  The exception to this rule is that every contract, absent express language to the contrary, has an implied covenant of good faith and fair dealing.  Id.  Thus, courts should take into account public policy concerns in determining the effect and extent of such waivers.

In the instant case, the waiver provisions are broad, defendants' affirmative defenses in part are based on bad faith, and the waivers do not contain express language disavowing the implied covenant of good faith and fair dealing.  Nonetheless, the court need not address the public policy concerns that arise with respect to each of defendants' affirmative defenses because, as discussed below, those defenses fail to withstand Rule 12(b)(6) scrutiny.  See Finova Capital Corp. v. Slyman, 2002 WL 318294 (N.D. Ill. Feb. 21, 2002).

## IV.  Plaintiff's Merits Arguments

An affirmative defense "rais[es] new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true."  JPMorgan Chase Bank, N.A. v. Mal Corp., 2009 WL 804049, at *1 (N.D. Ill. Mar. 26, 2009).  Affirmative defenses are subject to the pleading requirements of the Federal Rules of Civil Procedure and must set forth a "short and plain statement" of all the material elements of the defense asserted; bare legal conclusions are not sufficient. See Heller Financial, Inc. v. Midwhey Powder Co. Inc., 883 F.2d 1286, 1294 (7th Cir. 1989); Fed. R. Civ. P. 8(a); Renalds v. S.R.G. Restaurant Group, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000).

The essence of defendants' affirmative defenses is that just hours before the closing on the sale of the Property, plaintiff notified defendants of significant changes to the terms of the

Loan Agreement.[5]  The new terms required Warren Park, by the first anniversary date of the

Loan, to either: (a) make a $2,500,000 payment on the Loan; or (b) have sold at least 10 acres of

the 91.65 acres acquired in the deal at $10.80 per square foot and have certain entitlements from

the City of Frisco.  Defendants allege that they were pressured to enter into the Loan Agreement

with the additional, onerous terms because they had already signed a purchase agreement for the

Property with a $250,000 non-refundable down payment and would have lost $800,000 in fees

and expenses if the Loan did not close.  Defendants fail to explain, however, why they neglected

to include a contingency clause in these agreements that could have avoided some or all of the

consequences of a failure of the Loan to close.

In addition, defendants claim that William Ballent, an employee of Merrill Lynch, told

representatives at TRA that so long as they were working diligently on the project and

reasonably prompt progress was being made, plaintiff would make necessary modifications,

extensions, and accommodations as needed for completion of the project.  According to

defendants, plaintiff never made good on these assurances.

---

[5]  The factual background of defendants' affirmative defenses are laid out in their
response to plaintiff's L.R. 56.1 statement and in their statement of additional material facts.
L.R. 56.1(b) states that a party opposing summary judgment shall file "a statement, consisting of
short numbered paragraphs, of any additional facts that require the denial of summary judgment,
including references to the affidavits, parts of the record, and other supporting materials relied
upon."  Although defendants admit all of the facts essential to plaintiff's claims, their statement
of additional facts include numerous lengthy paragraphs containing some relevant facts, but
more often legal conclusions and facts wholly immaterial to the instant dispute.  Plaintiff,
recognizing the numerous problems with defendants' additional facts, provided responses only to
those facts that it found to be material and properly stated.  The consequence of both parties'
tactics leaves court with little choice but to treat as admitted all facts that are not denied and
disregard those facts that are immaterial or stated as legal conclusions.

In May 2008, in anticipation of the one year anniversary of the Loan Agreement, Warren Park was attempting to sell part of the Property in accordance with the terms of the Loan. It had a potential buyer, but had not acquired the necessary entitlements from the City of Frisco. Warren Park approached plaintiff for an extension of time to make the sale, but plaintiff refused to extend or alter the Loan, and required Warren Park to enter into a forbearance agreement for $250,000. Within a couple of months, Warren Park had a second offer on the Property, but was still without the necessary entitlements from the City. In mid-July 2008, Warren Park sought another extension of time from plaintiff to make the necessary sale, and a representative of plaintiff took the request under consideration. On July 18, 2008, plaintiff notified Warren Park that it would not extend or alter the Loan and that it would begin foreclosure proceedings immediately if Warren Park did not agree to make additional payments, accelerate the maturity date of the Loan, and cease drawing funds on Loan.

## A.  The Illinois Credit Agreement Act

Plaintiff correctly summarizes defendants' allegations as making two basic claims: "(1) [Plaintiff] allegedly misrepresented the terms of the Loan thereby inducing Defendants to enter into the Loan Agreement, Limited Joinder and Guaranty; and (2) [plaintiff] allegedly misrepresented its intention to modify or extend the Loan or apply fees to the balance for the Loan inducing Defendants to pay a $250,000 forbearance fee." Plaintiff argues that these allegations, which provide the foundation for each of defendants' affirmative defenses, even if taken as true, are barred by the Illinois Credit Agreement Act ("ICAA"), 815 ILCS 160/2, 3, which bars all actions or defenses by a debtor based on or related to an oral credit agreement.

First National Bank v. McBride Chevrolet, Inc., 267 Ill. App. 3d 367 at 367, 642 N.E.2d 138,

204 Ill. Dec. 676 (4th Dist. 1994).

The ICAA has been described by the Seventh Circuit as a "strong form" of the Statute of

Frauds because, unlike the usual Statute of Frauds, it requires that the agreement be signed by

both parties. See Resolution Trust Corp. v. Thompson, 989 F.2d 942, 944 (7th Cir. 1995).

Sections 2 and 3 of the ICAA, 815 ILCS 160/2, provide:

> § 2. Credit Agreements to be in writing. A debtor may not maintain an action on
> or in any way related to a credit agreement unless the agreement or commitment
> to lend money or extend credit or delay or forebear repayment of money sets forth
> the relevant terms and conditions, and assigned by the creditor and the debtor.

> § 3. Actions not considered agreements. The following actions do not give rise to
> a claim, counterclaim, or defense by a debtor that a new credit agreement is
> created, unless the agreement satisfies the requirements of Section 2:

> * * * *

> (3) the agreement by a creditor to modify or amend an existing credit agreement
> or to otherwise take certain actions, such as entering into a new credit agreement,
> forbearing from exercising remedies in connection with an existing credit
> agreement, or rescheduling or extending installments due under an existing credit
> agreement.

The ICAA defines a credit agreement as "an agreement or commitment by a creditor to

lend money or extend credit or delay or forebear repayment of money not primarily for personal,

family or household purposes, and not in connection with the issuance of credit cards."  815

ILCS 160/1(1).  The Illinois courts regard a guaranty agreement, when set forth as a "condition

precedent" to a loan, as part of the "comprehensive credit agreement" between the parties and

therefore governed by they ICAA.  Bank One, Springfield v. Roscetti, 309 Ill. App. 3d 1048, 723

N.E.2d 755, 763, 243 Ill. Dec. 452 (Ill. App. Ct. 4th Dist. 1999).  Applying this principle to the

instant case, it is clear from the language of the Guaranty and Limited Joinder that they were a

condition precedent to the Loan.  The Limited Joinder begins with the language, "[I] order to induce Lender to make the Loan . . ." and the Guaranty includes similar language further in the body of that agreement.  Defendants do not dispute that the agreements are "credit agreements" under this definition.  Therefore, the court finds that pursuant to the ICAA the Guaranty and the Limited Joinder are part of the "credit agreement" between the parties.

Defendants argue that the ICAA does not apply to bar their affirmative defenses of fraudulent inducement and economic duress because defendants seek to invalidate, rather than modify, the underlying contract.  Further, defendants argue that their defense of unclean hands simply seeks to prevent plaintiff from benefitting from its own wrongdoing.[6]  These arguments are specious at best.

There is nothing in the ICAA or the corresponding case law that suggests that defenses seeking nullification of a contract are somehow treated differently than defenses seeking modification of the an agreement.  The bottom line here is that under the ICAA, courts have "uniformly barred the claims and defenses of debtors which have relied on the existence of oral credit agreements."  Westinghouse Elec. Corp. v. McLean, 938 F. Supp. 487, 490 (N.D. Ill. 1996) (discussing cases applying the ICAA).  As explained in Whirlpool Financial Corp. v. Sevaux, 96 F.3d 216, 226 (7th Cir. 1996):

> Illinois courts have interpreted [§ 2 of the ICAA] to proscribe all actions which depend for their existence upon an oral credit agreement. Indeed there is no limitation as to the type of actions by a debtor which are barred by the Act, so long as the action is in any way related to a credit agreement.

---

[6]  Notably, defendants make no ICAA related argument as to their defense of equitable estoppel.

Traditional exceptions to the Illinois Statute of Frauds Act may not be raised to defend against actions within the scope of the ICAA.  Id.  Under this interpretation, all claims on or in any way related to an oral credit agreement--whether sounding in contract or in tort--are barred by the Act."  Id. at 225.   This is true even where the resulting consequences may seem harsh.  See Westinghouse, 938 F. Supp. at 489 ("Illinois courts have concluded that they must apply the [ICAA] even in the face of harsh consequences.").  Because the alleged oral promises that plaintiff made to defendants contradict the terms of the Guaranty and Limited Joinder, the ICAA bars those of defendants' affirmative defenses that rely on these allegations.  Therefore, defendants' affirmative defenses of fraudulent inducement and equitable estoppel, which defendants concede are reliant on plaintiff's oral promises, are barred.

## B.  Defendants' Remaining Affirmative Defenses

Defendants' remaining affirmative defenses fail on the merits.

## 1.  Economic Duress

Defendants argue that their affirmative defense of economic duress defeats plaintiff's motion for summary judgment because it raises a material issue of fact.  Specifically, defendants assert that plaintiff changed the terms of the loan agreement just hours before the guaranty was to be signed and after defendants had already signed the land sale purchase agreement and made a non-refundable deposit.

Economic duress is a condition where one is induced to make a contract by a wrongful act or threat of an another under circumstances that deprive one of the exercise of one's free will.  Hurd v. Wildman, Harrold, Allen & Dixon, 303 Ill. App. 3d 84, 91, 707 N.E.2d 609, 236 Ill. Dec. 482 (1st Dist. 1999); Costello v. Haller, 638 F. Supp. 2d 885, 893 (N.D. Ill. 2007).  To

establish duress, defendants must demonstrate "inducement by a wrongful act or threat of another to execute an agreement under circumstances depriving him of the exercise of free will in order to invalidate an agreement on the basis of duress." Id.  The acts or threats complained of must be wrongful in either the legal or moral sense, but "the defense cannot be predicated upon a demand that is lawful or upon doing or threatening to that which a party has a legal right to do." Id.  Further, "where consent to an agreement is secured merely because of hard bargaining positions or financial pressures, duress does not exist." Id.

In the instant case, defendants have not alleged that plaintiff threatened defendants or in any way acted outside of its legal rights.  Changing the terms of the loan agreement with notice to the parties before the agreements were signed, even on short notice, falls well within plaintiff's rights.  Although defendants might have felt financial pressure to sign in order to complete the land sale and prevent associated losses, there are no allegations to substantiate a claim that plaintiff deprived defendants of the free will to refuse to accept the new loan terms, or contemplate an alternative course of action.

Acknowledging these standards, defendants cite Havoco of America, Ltd. v. Sumitomo Corp. of America, 971 F.2d 1332 (7th Cir. Ill. 1992), for the proposition that under Illinois law economic duress may be raised as a defense when "the conduct of the party obtaining the advantage is shown to be tainted with some degree of fraud or wrongdoing . . .."  Because the court has rejected the defenses of fraud and misrepresentation, the doctrine on which defendants rely to support their claim of duress does not apply.  Consequently, defendants' economic duress affirmative does not raise a genuine issue of material fact sufficient to defeat plaintiff's motion for summary judgment.

**2.  Unclean Hands**

Under Illinois law, the unclean hands doctrine prevents a party from obtaining equitable

relief if he himself has engaged in misconduct.  Thomson Learning, Inc. v. Olympia Props.,

LLC, 365 Ill. App. 3d 621, 634 (Ill. App. Ct. 2d Dist. 2006).  The doctrine does not affect legal

rights.  Citadel Group Ltd. v. Wash. Reg'l Med. Ctr., 2009 WL 1329217 (N.D. Ill. May 13,

2009).  Because plaintiff's claims are for breach of contract and breach of guaranty, seeking

damages at law and not equity, defendants' affirmative defense of unclean hands does not

withstand federal pleading standards, and thus cannot defeat plaintiff's motion for summary

judgment.

**V.  Collateral Estoppel**

Finally, the issues underlying defendants' affirmative defenses have already been fully

briefed and considered by the Texas Bankruptcy Court in its dismissal with prejudice of the

action brought by Warren Park and defendants Silverman and Brauss in the adversary

proceeding.[7]  The Bankruptcy Court's final judgment regarding defendants' claims in that action

has collateral estoppel effect in the instant case and bars litigation of these same issues in this

court.  See Meyer v. Rigdon, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994).

<u>CONCLUSION</u>

For the reasons set forth above, plaintiff's motion for summary judgment on Counts I and

II is granted, and plaintiff's motion to strike defendants' affirmative defenses is deemed moot.[8]

---

[7]  Margaux Warren Park Partners, Ltd. v. GE Bus. Fin. Servs. (In re Margaux Warren Park Partners, Ltd.), 2009 WL 5061806 (Bankr. E.D. Tex. Dec. 15, 2009).

[8]  Because this matter has been resolved on alternative grounds, plaintiff's collateral estoppel argument need not be discussed.

14

Plaintiff is directed to present a draft final judgment order computing interest to February 18,

2010, for presentation to the court on February 18, 2010, at 9:15 a.m.


**ENTER:**      **February 10, 2010**

_____

**Robert W. Gettleman**
**United States District Judge**